(Nos. 59927, 59947 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee and Appellant, v. DONALD HOFFER, Appellant and Appellee.

*Opinion filed March 29, 1985.—Rehearing denied May 31, 1985.*

188

Miller & Feda, of Elgin (Ralph Ruebner, of Chicago, and Randy K. Johnson, of counsel), for appellant and appellee Donald Hoffer.

Neil F. Hartigan, Attorney General, of Springfield, and Robert J. Morrow, State's Attorney, of Geneva (Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chicago, and Phyllis J. Perko and Cynthia N. Schneider, of the State's Attorney's Appellate Service Commission, of Elgin, of counsel), for the People.

James J. Doherty, of Chicago, *pro se*, for *amicus curiae* the Public Defender of Cook County (Timothy P. O'Neill, of counsel).

JUSTICE MORAN delivered the opinion of the court:

The defendant, Donald Hoffer, was indicted by the grand jury of Kane County on three counts of murder. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), 9—1(a)(2).) After a jury trial, defendant was found guilty of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)), voluntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(b)), and involuntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)). The court entered judgment on each finding. Defendant then moved to vacate the judgments of conviction entered for murder and voluntary manslaughter, in that the judgments, with respect to these two convictions, were inconsistent. Following post-trial motions, the court vacated the judgments of conviction for voluntary and involuntary manslaughter, entering judgment on the murder conviction and sentencing defendant to a prison term of 20 years. The appellate court set aside the trial court's order vacating the voluntary- and involuntary-manslaughter convictions and reversed all three convictions, remanding the cause for a new trial. (122 Ill. App. 3d 13.) We allowed the petitions for leave to appeal of the defendant (No. 59927) and the State (No. 59947) (87 Ill. 2d R. 315(a)) and consolidated the causes for purposes of review. James J. Doherty, public defender of Cook County, was allowed to file an *amicus curiae* brief on behalf of the defendant.

Two issues are presented: (1) whether the three jury verdicts of guilty were legally inconsistent so as to require a new trial; and (2) whether remanding the cause for a new trial would violate principles of collateral estoppel and defendant's right to be free from double jeopardy.

The record reveals the following. Catherine Einsiedel, defendant's sister, testified at trial that she had known the victim, Harold (Ed) Peters, for three years. During that period, she lived with Peters but would periodically move in with the defendant when she and Peters had an argument. Peters was the father of Einsiedel's daughter, Shannon. She and Shannon had moved out of Peters' house and into the defendant's residence approximately three months prior to the time of the homicide. She did occasionally see Peters, however, during this three-month period.

Einsiedel's testimony indicates that on the evening of May 18, 1982, a friend, Tony Charbauski, visited her at the defendant's residence. During the evening, Peters entered the defendant's house through a window and went upstairs, where he confronted Einsiedel and Charbauski in her bedroom. Peters began yelling and attempted to engage Charbauski in a fight. Charbauski told Einsiedel to call the police. She stated that she did so, as she was concerned that someone might get hurt. Although Peters was attempting to kick and otherwise provoke him, Charbauski was able to get down the stairs and safely out of the house. Peters went back into the house, where he asked Einsiedel if their relationship was ended. When she answered affirmatively, Peters took a flashlight he was carrying and broke the dust cover on a nearby stereo. Before Peters left, he gave Einsiedel some money and told her that he would pay for the damage to the stereo. The police arrived minutes later. Einsiedel gave them the names of Peters and Charbauski, but she refused to file charges.

A short time later, the defendant returned home. Einsiedel related the events of the evening to him. According to her testimony, the defendant stated that he was sick of Peters breaking things and also, "he'd be ready for him when he came back after the bars closed." The

defendant denied making this statement.

Einsiedel and the defendant then went to their rooms. Einsiedel testified that about an hour later she heard the defendant say that Peters was back and she'd better get downstairs. When she got downstairs, she observed the defendant standing on the porch in his underwear, holding a shotgun. Peters was standing below the defendant, approximately five feet away. After an exchange of words, Peters turned his back on the defendant and threw his arms in the air. According to Einsiedel it was at this point that she yelled, "Don, don't do it; don't do it; don't shoot." Seconds later the gun went off and Peters was fatally wounded.

The defendant testified that when Peters began walking down the porch stairs, it appeared that he had been drinking. The defendant further testified that, in the past, he had observed Peters become more violent when he had been drinking. According to defendant, his gun was then pointing straight up and was resting on his shoulder. He then heard his sister call his name and he began to turn to look at her when he heard her say "Don't shoot." When he looked back, Peters was bringing his hands down and turning around. Defendant stated that he thought Peters was reaching for a gun because he knew that Peters owned and carried guns, was skilled in using them, and had previously threatened him with a gun. The defendant began to lower the gun with one hand, while reaching with his other hand to grab the stock, when the gun went off and Peters was struck. Although the defendant testified that Peters was facing him when the gun discharged, a pathologist testified that the autopsy indicated that Peters was shot in the back. The pathologist also testified that Peters was intoxicated at the time he was shot.

The court instructed the jury that the defendant was charged with the offense of murder, which includes the

offenses of voluntary and involuntary manslaughter. (Illinois Pattern Jury Instructions (IPI), Criminal, No. 2.01 (2d ed. 1981).) Definitional and issues instructions were tendered to the jury on murder, voluntary manslaughter (unreasonable belief), and involuntary manslaughter. The issues instruction on voluntary manslaughter required the jury to find that, at the time the defendant performed the acts which caused the death of Peters, defendant *believed* that circumstances existed which would have justified the killing. In addition, the jury would have to find that this belief was unreasonable. IPI Criminal 2d No. 7.06.

The issues instruction on murder was fashioned after the murder instruction recommended in the 1968 edition of the criminal Illinois Pattern Jury Instructions where the affirmative defense of self-defense is raised (IPI Criminal No. 27.01 (7.02 and 25.05) (1968)). To find the defendant guilty of murder by following this instruction, the jury would have to find that the defendant was not justified in using the force which he used, and that the defendant *did not believe* that circumstances existed which justified the use of such force. It should be noted that the issue instruction for murder (where self-defense is raised) in the 1981 (2d) edition of IPI Criminal does not require the jury to make a finding regarding the absence of a belief by the defendant that justifiable circumstances existed. IPI Criminal 2d No. 27.01 (7.02 and 24–25.06A).

Further, the issues instructions on murder and voluntary manslaughter, on the other hand, required that the State prove the defendant performed the acts which caused the death of the victim and that defendant did so either intending to kill or do great bodily harm, or knowing that his acts would cause or create a strong probability of death or great bodily harm.

Finally, the jury was given the definitional and issues

instructions on involuntary manslaughter. The definitional instruction made it clear that involuntary manslaughter is caused unintentionally, although without lawful justification, by acts which are performed recklessly and are likely to cause death or great bodily harm. (IPI Criminal 2d No. 7.07.) The issues instruction on involuntary manslaughter required the State to prove that the defendant performed the acts which caused the death of the victim and that he performed those acts recklessly. In addition the State would have to prove that those acts were likely to cause death or great bodily harm. IPI Criminal 2d No. 7.08.

The State maintains that the appellate court erred in remanding the cause for a new trial. In its brief before this court, the State argues that the conviction for murder was legally consistent with the guilty verdicts for voluntary and involuntary manslaughter. The jury was instructed that "[t]he defendant is charged with the offense of murder, which includes the offenses of voluntary manslaughter and involuntary manslaughter." (IPI Criminal 2d No. 2.01.) Further, the jurors were given verdict forms (six) of guilty and not guilty of murder, voluntary manslaughter and involuntary manslaughter but were not informed that they could return a guilty verdict on only one of the offenses. (IPI Criminal 2d Nos. 26.01, 26.02, 26.05.) Based on the above, the State, therefore, concludes that the jury was not confused when it rendered guilty verdicts for murder and each of the lesser included offenses of voluntary and involuntary manslaughter. These verdicts, reasons the State, "were the jury's clear expression that Hoffer was to be held responsible for homicide and this necessarily included each of its progressive degrees."

This rationale suggests that because voluntary manslaughter is a lesser included offense of murder (*People v. Fausz* (1983), 95 Ill. 2d 535, 539; *People v. Pierce*

(1972), 52 Ill. 2d 7, 11), and involuntary manslaughter is a lesser included offense of both voluntary manslaughter and murder (*People v. Taylor* (1973), 54 Ill. 2d 558, 560; *People v. Arndt* (1972), 50 Ill. 2d 390, 394), the mental state required for murder "subsumed the lesser mental states required for voluntary manslaughter and involuntary manslaughter." Thus, concludes the State, the guilty verdicts were only logically inconsistent and under *People v. Hairston* (1970), 46 Ill. 2d 348, 362-63, and *People v. Frias* (1983), 99 Ill. 2d 193, 203, reversal and a new trial are not proper.

We would agree with the State that the three guilty verdicts reached by the jury may have been a predictable outcome, considering the tendering of the lesser included offense instruction in conjunction with the six verdict forms. Nevertheless, we do not agree with the State that the three jury verdicts were legally consistent.

An "included offense" is defined in Illinois as an offense which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***." (Ill. Rev. Stat. 1981, ch. 38, par. 2—9(a).) The offenses of murder, voluntary manslaughter and involuntary manslaughter are distinguished only by the diminishing degree of mental culpability necessary to sustain each. While murder and voluntary manslaughter (unreasonable belief) both require proof of intent or knowledge (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—2(b)), the offense of voluntary manslaughter is committed only when the defendant acts with an unreasonable belief that the killing was justified. This mental state is considered less culpable, and, as such, voluntary manslaughter is considered an included offense of murder. Similarly, involuntary manslaughter is considered an included offense of voluntary manslaughter and murder because it involves

an unintentional killing of a human being without lawful justification while recklessly performing acts which are likely to cause death or great bodily harm. Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).

The mental states involved in each of these offenses are mutually inconsistent. Where a determination is made that one exists, the others, to be legally consistent, must be found not to exist. This is made especially clear in the instant case, where the jury received an issue instruction on murder which required the State to prove that the defendant *did not believe* that circumstances existed which justified the use of force. (IPI Criminal No. 27.01 (7.02 and 25.05) (1968).) By finding the defendant guilty of murder, therefore, the jury specifically found that defendant did not believe his conduct was justified. At the same time, by finding him guilty of voluntary manslaughter, the jury determined that he did believe, although unreasonably, that his conduct was justified. Additionally, the jury concluded that the defendant killed another, intentionally or knowingly (murder, voluntary manslaughter) while simultaneously finding that defendant recklessly but unintentionally caused the death of the victim (involuntary manslaughter).

This court adheres to the view that "where inconsistent verdicts of guilty are returned, a reversal and new trial on all counts must follow." (*People v. Frias* (1983), 99 Ill. 2d 193, 203; *People v. Hairston* (1970), 46 Ill. 2d 348, 361.) Because we conclude that the verdicts rendered by the jury were legally and logically inconsistent, we find that reversal and a new trial are required.

In what appears to be an alternative argument, the State maintains that, while the mental states for murder and voluntary manslaughter may be inconsistent, the conviction for murder should be upheld because instructions for voluntary manslaughter were not warranted on the facts of this case. In addition, the State contends

that the mental states for murder and involuntary manslaughter are not inconsistent since lack of intent is not a necessary element of involuntary manslaughter. We do not agree.

This court has held in murder cases "that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, an instruction defining manslaughter should be given." (*People v. Lockett* (1980), 82 Ill. 2d 546, 550. See *People v. Ward* (1984), 101 Ill. 2d 443, 451.) In the instant case, there was ample evidence to support the tendering of a manslaughter instruction. As stated above, defendant was aware that Peters owned guns and had threatened him, on a prior occasion, with a gun. In addition, defendant was aware that Peters knew how to use guns and became violent when intoxicated. (See *People v. Lynch* (1984), 104 Ill. 2d 194.) Further, the State's argument that murder and involuntary manslaughter do not have inconsistent mental states is contrary to the language of the involuntary-manslaughter statute (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)), which defines the offense as an unintentional killing (*People v. Fernetti* (1984), 104 Ill. 2d 19, 25).

Having concluded, therefore, that the legally inconsistent verdicts require reversal and a new trial, we need address defendant's argument that remanding the cause for a new trial violates principles of collateral estoppel and his right to be free from double jeopardy. The premise of defendant's argument is that the jury's verdict, finding him guilty of the lesser included offense of involuntary manslaughter, negates the existence of the intent element of murder and voluntary manslaughter and, therefore, impliedly acquitted him of the greater offenses. Thus, defendant contends, to remand the cause and relitigate the charged offense of murder, as well as the included offenses of voluntary and involuntary manslaughter, would offend both Federal and State double

jeopardy guarantees (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10), as well as Illinois statutory law (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a)).

The constitutional prohibition of double jeopardy protects a defendant from prosecution of an offense after acquittal or conviction of the same offense and prohibits multiple punishments for the same offense. (*Illinois v. Vitale* (1980), 447 U.S. 410, 415, 65 L. Ed. 2d 228, 235, 100 S. Ct. 2260, 2264.) Section 3—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a)) provides, in relevant part, that "[a] conviction of an included offense is an acquittal of the offenses charged." Defendant relies on this statutory provision and the "implicit acquittal" principle enunciated in *Green v. United States* (1957), 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, in support of his double-jeopardy argument. We find that reliance on both the statute and the principle of law set forth in *Green* is misplaced.

In *Green*, the defendant was charged with arson and murder in the first degree. The jury was instructed that it could find the defendant guilty of arson under the first count and either first- or second-degree murder under the second count. Defendant Green was found guilty of arson and second-degree murder. The verdict was silent as to the charge of murder in the first degree. Defendant appealed the second-degree-murder conviction. The conviction was reversed and the cause remanded for a new trial. Although defendant raised the defense of former jeopardy in his second trial, he was tried again for first-degree murder and found guilty on that charge. The Supreme Court found that the constitutional prohibition against double jeopardy had been violated since the jury had implicitly acquitted defendant on the charge of first-degree murder by finding him guilty of second-degree murder.

"In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.' " 355 U.S. 184, 191, 2 L. Ed. 2d 199, 206, 78 S. Ct. 221, 225.

To apply this rationale to the facts of the instant case is to ignore the jury's express findings of guilt as to the offenses of murder and voluntary manslaughter. We agree with the appellate court, therefore, that, under the circumstances of this case, application of the doctrine of implied acquittal would be fictional. Similarly, we find that the established principle of law codified in section 3—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a)), wherein conviction of a lesser offense operates as an acquittal of the greater offense (*People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 466), cannot rationally be applied where, as here, a jury returns verdicts of guilty not only on the offense charged but also on the uncharged lesser included offenses. We find that the statutory provision applies only when the jury returns a guilty verdict on a lesser offense and is silent as to the charged offense.

Defendant further argues that the principle of collateral estoppel, which is embodied in the double jeopardy clause (*Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189), bars defendant's retrial for murder and voluntary manslaughter. The court in *Ashe* stated that the principle of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.) Defendant maintains that in finding him guilty of involuntary manslaughter, the jury found that he had acted unintentionally and recklessly.

Thus, defendant concludes, this factual finding negates the accusation that he acted with intent or knowledge and estops the State from relitigating those mental states anew.

The jury, in the instant case, had to make a factual determination as to the mental state of the defendant at the time of the homicide. By finding defendant guilty of the charged offense as well as the two included offenses, the jury necessarily found that the defendant possessed three distinct and mutually inconsistent mental states at the time of the offense. As such, we found the verdicts legally inconsistent. Implicit in the rule of law which requires a new trial when multiple guilty verdicts are legally inconsistent is the invalidity of the underlying factual findings upon which the verdicts were made. In the instant case, there has been no valid and final judgment and thus no ultimate factual determination upon which to rely for purposes of collateral estoppel.

We note that the *amicus curiae* brief of the public defender urges this court to find that verdicts of guilty of murder and guilty of voluntary manslaughter are legally and logically consistent. This view is based upon the issues instruction for murder prescribed in the second (1981) edition of IPI Criminal where self-defense is raised. (IPI Criminal 2d No. 27.01 (7.02 and 24—25.06A).) Because this instruction does not include the "lack of belief in justification" element, the instruction for voluntary manslaughter (IPI Criminal 2d No. 7.06) includes *all* of the elements of murder *plus* the additional elements of provocation or unreasonable belief in the necessity to act in self-defense. As such, *amicus curiae* maintains that guilty verdicts on each offense are consistent, since the jury has necessarily found all the elements of murder, accompanied by mitigating circumstances. He concludes, therefore, that judgment must be entered and sentence imposed on the less serious offense

of voluntary manslaughter. (He also agrees with defendant that, in this case, judgment should be entered on the involuntary-manslaughter conviction, although he does not provide any reasoning to support this position.)

As discussed above, the jury in the instant case received an issue instruction for murder which *did* include the "lack of belief in justification" element. As such, the argument asserted by *amicus curiae* is inapplicable to the facts of this case and, accordingly, does not persuade. We view with concern, however, the significant number of cases in which juries are finding defendants guilty of both murder and voluntary or involuntary manslaughter. (See, *e.g., People v. Washington* (1984), 127 Ill. App. 3d 365; *People v. Milner* (1984), 123 Ill. App. 3d 656; *People v. Kendricks* (1984), 121 Ill. App. 3d 442; *People v. Fox* (1983), 114 Ill. App. 3d 593; *People v. Stuller* (1979), 71 Ill. App. 3d 118.) We would suggest that this phenomenon results from the failure to apprise the jury of the distinct and mutually exclusive mental states necessary to support findings of guilty for the offenses of murder, voluntary manslaughter and involuntary manslaughter. Also contributing to the inconsistent verdicts, as mentioned by the appellate court, is the recommended forms of verdict in murder-manslaughter cases. (See *People v. Glass* (1984), 128 Ill. App. 3d 869, and *People v. Almo* (1984), 123 Ill. App. 3d 406, wherein the juries in murder-manslaughter cases demonstrated their confusion as to the proper procedure for deliberation by inquiring of the court whether it was necessary to return verdicts on each charge.) It follows that amendment of the pattern instruction is needed.

For the reasons stated above, the judgment of the appellate court, reversing the circuit court and remanding the cause for a new trial, is affirmed.

*Judgment affirmed.*