Charles MASON, Petitioner–Appellant,

v.

Richard B. GRAMLEY, Warden, Pontiac Correctional Center, Respondent–Appellee.

No. 92–2789.

United States Court of Appeals, Seventh Circuit.

Submitted July 21, 1993.

Decided Dec. 1, 1993.

Charles Mason, pro se.

Bradley P. Halloran, Office of the Atty. Gen., Chicago, IL, for respondent-appellee.

Before MANION and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ILANA DIAMOND ROVNER, Circuit Judge.

A jury found Charles Mason guilty of first degree murder and attempted first degree murder, and an Illinois trial court then sentenced Mason to eighty years in prison on the first degree murder conviction and to a concurrent thirty-year term on the attempted first degree murder conviction. The Illinois Appellate Court affirmed Mason's convictions, and the Illinois Supreme Court denied Mason's petition for leave to appeal. Mason then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition, and we affirm.

## I.

Mason was convicted of murdering David Reid and of attempting to murder Bernard Carpenter. Mason admitted that he shot Carpenter and Reid from the back seat of Carpenter's car, but he maintained that he had done so in self-defense. Two bystanders found Reid slouched in the front seat of the car with his right hand touching the floor, whereas Carpenter was found on the ground outside the car. Reid subsequently was pronounced dead from two gunshot wounds to the head. Carpenter survived, however, and he testified at Mason's trial. Carpenter related that he had been driving Mason to a particular location and that after pulling over to drop Mason off, he felt a sudden shocking sensation and went numb. He testified that there had been little or no conversation in the car between him, Carpenter, and Mason prior to the shootings.

Mason told a different story, testifying at trial that he had shot Carpenter and Reid in self-defense. Apparently, Reid and Carpenter had been involved in the sale of cocaine from Mason's home in the summer of 1988. Mason testified that an argument had developed in the car because Reid had accused Mason of "wanting to take over [Reid's] turf." Mason said that Reid had threatened to kill him and that in doing so, Reid had reached his right hand to the side of his seat, causing Mason to believe that he might be reaching for a weapon. Mason responded by shooting Reid twice in the head. At the same time, Mason saw Carpenter reach for something, and he thus shot Carpenter as well.

## II.

■ Mason raises four claims in his habeas petition, but his primary argument is that the Illinois murder statute, 720 ILCS §§ 5/9–1 & 5/9–2, is unconstitutional and that the instructions provided to the jury in accordance with that statute misstate the burdens of proving second degree murder. Mason raises other claims, but as we discuss below, he has procedurally defaulted them by failing to advance the claims in his petition for leave to appeal to the Illinois Supreme Court. We accordingly need not address them here.

Before Mason may bring his constitutional claims in a federal habeas petition, he must exhaust his state remedies. 28 U.S.C. § 2254; *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). Respondent concedes that Mason has done so here. Although Mason could have pursued a collateral remedy in state court, he was not required to do so. We have previously held " 'that a petition for a writ of habeas corpus should be dismissed for failure to exhaust [the Illinois post-conviction] remedy only if there is direct precedent indicating that under the particular circumstances of a prisoner's case the waiver [and res judicata] doctrine[s] will be relaxed.' " *Gornick v. Greer,* 819 F.2d 160, 161 (7th Cir.1987) (quoting *Perry v. Fairman,* 702 F.2d 119, 121 (7th Cir.1983)) (internal quotation omitted). There is no such precedent here.

■ Even where state remedies have been exhausted, however, the futility of bringing constitutional claims in a collateral state proceeding will not excuse a procedural

**1348**

default. *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982). The failure to present constitutional claims before the highest state court will result in a procedural default of those claims unless the petitioner can show cause and prejudice. *Nutall v. Greer*, 764 F.2d 462, 465 (7th Cir. 1985); *see also Wainwright v. Sykes*, 433 U.S. 72, 86–91, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977); *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir.1990); *United States ex rel. Bonner v. DeRobertis*, 798 F.2d 1062, 1065–66 (7th Cir.1986).

■ Respondent points out that Mason raised only one constitutional claim in his petition for leave to appeal to the Illinois Supreme Court—that the Illinois murder statute was unconstitutional. Mason did not raise an ineffective assistance of counsel claim in his petition for leave to appeal, and although he briefly raised two jury instruction issues, he described them as prejudicial trial errors rather than as constitutional violations. Merely presenting facts to the state court that would support a federal constitutional claim is not the same as presenting the constitutional argument itself. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Id.* (citation omitted). Rather, the issue must have been presented in such a way that the state court would have a " 'fair opportuni-

ty' to apply controlling legal principles to the facts bearing on [the petitioner's] constitutional claim." *Id.* Thus, the claims not raised before the Illinois Supreme Court are procedurally defaulted unless Mason can show cause and prejudice. He has not attempted to do so here.

Instead, Mason contends that by raising all of his claims before the Illinois Appellate Court, he provided the state courts with the necessary opportunity to review those claims. Yet our cases clearly hold that Mason also was required to present his claims to the Illinois Supreme Court in his petition for leave to appeal. *See, e.g., DeRobertis*, 798 F.2d at 1065–66; *Nutall*, 764 F.2d at 465. Mason's failure to do so resulted in a procedural default of those claims, precluding us from considering them on habeas.

■ We may of course consider the one constitutional claim not defaulted—that the new Illinois murder statute and the jury instructions given pursuant to that statute violated Mason's due process rights.[1] The State charged Mason with first degree murder under 720 ILCS § 5/9–1.[2] Mason admitted at trial that he shot Reid and Carpenter, but he presented evidence that he believed he was acting in self-defense. He thus maintains that he was guilty only of second degree murder under 720 ILCS § 5/9–2, which provides:

(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined

---

1. The statute at issue here took effect on July 1, 1987. 720 ILCS § 5/9–2. The new statute replaced murder with "first degree murder" and "voluntary manslaughter" with "second degree murder." *See* 720 ILCS §§ 5/9–1 & 5/9–2. It also allocated to the defendant the burden of proving a mitigating factor that would reduce first degree murder to second degree murder. *See Verdin v. O'Leary*, 972 F.2d 1467, 1470 n. 3 (7th Cir.1992); *see also* Robert J. Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494 (1987) (drafter of statute discussing the reasons for the change, its constitutionality, and its use). For a complete discussion of the changes in Illinois' murder statute, *see* James B. Haddad, *Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created*, 19 Loy.U.Chi.L.J. 995 (1988); Timothy P. O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J.Marshall L.Rev. 209 (1986); *see also,* James B. Haddad,

*Allocation of Burdens in Murder–Voluntary Manslaughter Cases: An Affirmative Defense Approach*, 59 Chi.Kent L.Rev. 23 (1982) (as cited in *Gilmore v. Taylor*, — U.S. —, —, 113 S.Ct. 2112, 2115, 124 L.Ed.2d 306 (1993)).

2. That section provides:

(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
(3) he is attempting or committing a forcible felony other than second degree murder.

in paragraphs (1) or (2) of subsection (a) of Section 9–1 of this Code and either of the following mitigating factors are present:

(1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or

(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

The statute requires the defendant to prove by a preponderance of the evidence that one of the mitigating factors existed. *Id.* at § 5/9–2(c). Yet, "the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing. . . ." *Id.* Mason maintains that this statutory scheme is unconstitutional because it assigns to a defendant, rather than to the State, the burden of proving the existence of a mitigating factor.

▪ Due process requires that the State prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant was] charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986). A defendant's due process rights are violated when the burden shifts to the defendant to disprove an element of the offense. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see also Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977). Mason contends that Illinois' practice of assigning a defendant the burden of proving a mitigating factor violates due process as it alleviates the State's burden to prove all elements of first degree murder beyond a reasonable doubt.[3] The Illinois courts have consistently rejected this argument (*see People v. Young*, 248 Ill. App.3d 491, 188 Ill.Dec. 456, 471, 618 N.E.2d 1026, 1041–42 (1993) (collecting cases)), and we too find the murder statute consistent with due process.

▪ The United States Supreme Court has developed a significant body of case law defining the standards for shifting the burdens of proof in criminal cases. For example, in considering a New York statute on which the current Illinois statute was modeled, the Court determined that if the mitigating factor is an affirmative defense, rather than an element of the underlying offense, it does not offend due process to require that the defendant prove the mitigating factor by a preponderance of the evidence. *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327. Although the prosecution must " 'prove beyond a reasonable doubt all elements *included in the definition of the [charged] offense* ' " (*McMillan*, 477 U.S. at 85, 106 S.Ct. at 2415 (quoting *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327) (emphasis in *McMillan* )), and although the State's power to define the elements of a crime has constitutional limits,[4] we must hes-

---

**3.** Mason also argues that the mental states for first and second degree murder are mutually inconsistent and that in establishing a mitigating factor, he was required to negate a necessary element of first degree murder. He bases this argument on the Illinois Supreme Court's determination in *People v. Hoffer*, 106 Ill.2d 186, 88 Ill.Dec. 20, 25, 478 N.E.2d 335, 340 (1985), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985), that the mental states for murder and voluntary manslaughter were mutually inconsistent. That court later rejected the *Hoffer* view in *People v. Wright*, 111 Ill.2d 18, 94 Ill.Dec. 726, 731, 488 N.E.2d 973, 978 (1986), determining that voluntary manslaughter was not distinguished from murder in regard to the defendant's intention or mental state. Of course, both

*Hoffer* and *Wright* addressed the previous and not the current murder statute in Illinois. Illinois courts have consistently rejected this argument under the new statute. *See, e.g., People v. Hooker*, 249 Ill.App.3d 394, 188 Ill.Dec. 504, 513, 618 N.E.2d 1074, 1083 (1993).

**4.** For example, a State may not " 'declare an individual guilty or presumptively guilty of a crime,' " nor may it " 'validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt.' " *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327. (quoting *McFarland v. American Sugar Rfg. Co.*, 241 U.S. 79, 86, 36 S.Ct. 498, 501, 60

itate before concluding "that due process bars the State from pursuing its chosen course in the area of defining crimes." *Id.* at 86, 106 S.Ct. at 2416. The deference we afford to the States in allocating burdens of proof within constitutional limits is even more pronounced. *Patterson* explained that:

> [I]t is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

432 U.S. at 201–02, 97 S.Ct. at 2322 (quoting *Speiser v. Randall*, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958)); *see also McMillan*, 477 U.S. at 85, 106 S.Ct. at 2416.

Thus, in *Patterson* and later cases, the Court has approved state statutory schemes that do not require the State to disprove every affirmative defense but that instead allocate to a defendant the burden of establishing his affirmative defense by a preponderance of the evidence. *See Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327; *see also Martin v. Ohio*, 480 U.S. 228, 233, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987). *Patterson* and *Martin* hold that a State's allocation of the burdens of proof violate due process only if the State assigns to a defendant the burden of disproving a necessary element of the charged offense. *Martin*, 480 U.S. at 233–34, 107 S.Ct. at 1101–02;[5] *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327. Moreover, the Court recently relied on *Patterson* in upholding a California law that assigned a defendant the burden of proving his incompetence to stand trial, stating that "because the States have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area." *Medina v. California*, —— U.S. ——, ——, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992).

 The Illinois statute here is consistent with these established due process principles. The statute requires that the State first prove beyond a reasonable doubt all elements of the offense of first degree murder as defined in 720 ILCS § 5/9–1. A first degree murder charge will be reduced to second degree murder under section 5/9–2 only where the State has proven the elements of first degree murder and the defendant has established a mitigating factor by a preponderance of the evidence. Although the statute assigns to a defendant the burden of establishing his affirmative defense, it also requires that the jury be instructed "not [to] consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." *Id.* at § 5/9–2(c).

The instructions given at Mason's trial made clear that the State's burden of proving the defendant's guilt beyond a reasonable doubt "remains on the State throughout the case." (R. 170). The jury was instructed to convict if it found, based upon all the evidence, that the State had proven beyond a reasonable doubt that Mason killed Reid without lawful justification and that Mason had possessed either the requisite intent or

---

L.Ed. 899 (1916), and *Tot v. United States*, 319 U.S. 463, 469, 63 S.Ct. 1241, 1246, 87 L.Ed. 1519 (1943)).

**5.** In *Martin*, the Court explained that the result might have been different "if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, *i.e.*, that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard." 480 U.S. at 233–34, 107 S.Ct. at 1102. In that instance, the instructions would have run afoul of *Winship* because they would have relieved the State of its burden of proving all elements of the offense beyond a reasonable doubt. Yet, because the given instructions conveyed to the jury that *all* evidence must be considered in determining whether the State had met its burden of proving the *elements* of the defendant's offense beyond a reasonable doubt, the ultimate burden remained with the State and did not create a *Winship* problem. *Martin*, 480 U.S. at 233–34, 107 S.Ct. at 1101–02.

knowledge that his acts created a strong probability of death or great bodily harm. (R. 163). Only after finding that the State had met its burden could the jury consider whether the defendant had proven by a preponderance of the evidence the existence of a mitigating factor. (*See* R. 170 ("If the State proves beyond a reasonable doubt that the defendant is guilty of First Degree Murder, the defendant then has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of Second Degree Murder instead of First Degree Murder").) By presenting evidence of a mitigating factor, Mason was not attempting to disprove that he killed Reid or that he intended to (or knew that his actions would) cause death or great bodily harm. Rather, by introducing evidence of a mitigating factor, Mason sought to lessen his culpability for the underlying offense. The burden of proving the elements of first degree murder thus did not shift.

Mason contends that his case is closer to *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), than to *Patterson.* In *Mullaney,* the Court concluded that the defendant's due process rights were violated when he was required to negate a necessary element of murder in establishing the existence of a mitigating circumstance. The Maine statute at issue in *Mullaney* required proof of malice aforethought or the absence of provocation as an element of the offense of murder. The defendant, however, maintained that he had acted in the heat of passion on sudden provocation, and the statute required that he prove this by a preponderance of the evidence in order to reduce his offense to manslaughter. The *Mullaney* jury was instructed under Maine law "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.* at 686, 95 S.Ct. at 1883. By requiring the defendant to prove sudden provocation where malice aforethought was "conclusively implied," the Maine statute essentially required him to disprove an essential element of murder under Maine law. The Maine statute

and the instructions to the jury thus ran afoul of *Winship* 's requirement that the State prove all elements of the offense beyond a reasonable doubt. *Id.* at 700–01, 95 S.Ct. at 1890–91; *see also Patterson,* 432 U.S. at 215–16, 97 S.Ct. at 2329–30 (discussing *Mullaney* ). As *Patterson* explained, the constitutional problem in *Mullaney* was that "malice, in the sense of the absence of provocation, was part of the definition of [the] crime" of murder, yet it was essentially presumed and "could be rebutted by the defendant only by proving by a preponderance of the evidence that [the defendant] acted with heat of passion upon sudden provocation." 432 U.S. at 216, 97 S.Ct. at 2330. *Patterson* distinguished *Mullaney* because under the New York statute, no element of murder was presumed or implied against a defendant. *Id.; see also Smart v. Leeke,* 873 F.2d 1558, 1562 (4th Cir.1989) (en banc) (classifying *Mullaney* as "a presumption case" that offers "little, if any, support" to a defendant making a constitutional challenge to a statute that shifts the burden of proof on an affirmative defense), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989).

The same is true here. The Illinois statute requires the State to prove all elements of first degree murder beyond a reasonable doubt, and it only shifts to the defendant the burden of establishing an affirmative defense once the State has met its initial burden. Moreover, in proving a mitigating factor, a defendant in Illinois is not required to disprove an essential element of first degree murder. Under the statute, proof of a mitigating factor does not act to negate the mental state required for first degree murder. *See Alvarez v. McGinnis,* 4 F.3d 531, 535 (7th Cir.1993) ("These mitigating factors do not affect the elements of murder."). The Illinois statute thus resembles that approved by the Court in *Patterson* (*see, e.g., Hooker,* 188 Ill.Dec. at 513, 618 N.E.2d at 1083; Robert J. Steigman, *First and Second Degree Murder in Illinois,* 75 Ill. B.J. 494, 495 (1987) (section on second degree murder was "drafted to track as closely as possible the situation and reasoning in the *Patterson* case"); Timothy O'Neill, *An Analysis of Illinois New Offense of Second Degree Murder,*

**1352**

20 J.Marshall L.Rev. 209, 221 (1986) ("new Illinois scheme is strikingly similar to that found constitutional" in *Patterson*), meaning that *Patterson* and not *Mullaney* controls our decision here.

Mason's reliance on *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), also is misplaced. The Illinois jury instructions we considered there were based on the former version of the Illinois murder statute.[6] Moreover, our *Falconer* decision did not turn on the presumption and burden of proof questions presented here. *See Falconer,* 905 F.2d at 1136; *see also Gilmore v. Taylor,* — U.S. —, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). Instead, the problem in *Falconer* was that the jury instructions permitted the jury to find the defendant guilty of murder even if it found one of the mitigating mental states. As *Falconer* explained, "[n]o matter which side carried the burden of proof on any particular element or defense, there can be no question that a murder verdict would have been improper if the jury had found one of the mitigating mental states." 905 F.2d at 1136. The jury in Mason's case could not have convicted him of first degree murder if it found that he had established a mitigating factor by a preponderance of the evidence. In that instance, the jury was instructed that it must find Mason guilty only of the lesser offense of second degree murder. (R. 170.) The instructions to Mason's jury thus did not deny his right to due process.

AFFIRMED.

---

6. The Illinois pattern jury instructions were rewritten after enactment of the present statute. *Gilmore v. Taylor,* — U.S. —, — & n. 1, 113 S.Ct. 2112, 2115 & n. 1, 124 L.Ed.2d 306 (1993) (citing 1 Illinois Pattern Jury Instructions—Criminal § 7.02B (3d ed. 1992 & 1993 Supp.)).