**UNITED STATES of America ex rel. Terry J. WILLIAMS, Petitioner,**

v.

**Odie WASHINGTON, Director, Illinois Department of Corrections, Respondent.**

No. 94 C 7754.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 24, 1995.

Terry J. Williams, Danville, IL, Pro Se.

Bradley P. Halloran, Arleen C. Anderson, Attorney General's Office, Chicago, IL, for Howard Peters, III.

Arleen C. Anderson, Attorney General's Office, Chicago, IL, for George Detella, Roland Burris.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Petitioner Terry Williams brings this *pro se* action against Respondent Odie Washington, the Director of the Illinois Department of Corrections, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Williams is imprisoned for a 1986 murder conviction, and now attacks the conviction on an array of constitutional grounds. For the reasons set forth below, we deny the petition in its entirety.

### I. Background

At Williams's trial, the State offered evidence proving the following facts underlying the petitioner's murder conviction. On June 7, 1985, Williams was drinking at the Dew Drop Inn, a bar in Summit, Illinois. At around 4 p.m., Brenda Brooks, the bar's manager, and her husband, John Brooks, who occasionally served as the bar's "bouncer," arrived at the Dew Drop. At that time, the Brookses saw that Williams was arguing with Jimmy Loy, a regular Dew Drop customer. At around 5 p.m., Williams and Loy escalated the argument into a fistfight outside the bar. After the fight, the combatants returned to the bar and continued to argue. John Brooks repeatedly ordered the two combatants to be quiet, but finally Brooks escorted Williams from the bar at around 6 p.m.

Williams returned to the bar thirty minutes later. Brenda Brooks told a customer, Jimmy Meyers, that she thought Williams might be carrying a gun in his pants. Trial Transcript ("Tr.") at 15. Meyers informed John Brooks, who moved behind Williams and grabbed the gun. Brooks gave the gun to Meyers and told Pamela Thorn, a server at the Dew Drop, to phone the police. At that time, Williams and Loy began to fight again; Brooks separated them and ordered

Williams to leave. Williams asked for his gun, but Brooks replied that the gun would be returned in a few days if Williams "sobered up." Tr. at 17. As Williams departed, he announced, "I will be back." Tr. at 17. In a few minutes, Williams returned with a shotgun. Williams pointed the shotgun at John Brooks, who raised his hands in the air and said, "Let's talk about this." Tr. at 64. But Williams fired, reloaded, and fired again; the first shot killed Brooks.

According to Brenda Brooks, Meyers, and Thorn, John Brooks never threatened Williams. Tr. at 28–29, 67, 236. But Williams's testimony reported a different story. Williams testified that he started drinking at the Dew Drop around 2:30 or 3 p.m. By 6 p.m., he had drank between seven and nine cans of beer. Tr. at 159. At around 6:30 p.m., he scuffled with Jimmy Loy; twenty to thirty minutes later, Williams left the bar. Williams then returned to the Dew Drop at around 8 p.m., purportedly in order to meet a friend who wished to use Williams's van. Tr. at 164. In the next ninety minutes, Williams bought a round for the bar and drank another three beers.

But at around 9:25 p.m., Williams testified, Loy struck Williams on the head and knocked him to the floor. Tr. at 167–68. According to Williams, John Brooks then "[a]ll of a sudden ... came out of nowhere and tried to put a boot to my head and sent me back to the floor, breaking my glasses and cutting me right about the eye." Tr. at 168. Brooks then purportedly took Williams's wallet, wristwatch, and knife. Tr. at 168–69. Williams testified that Brooks also obtained Williams's pistol; according to Williams, Brooks said "he wanted to see does this thing work" and pointed the gun at Williams's forehead. Tr. at 170. Brooks allegedly pulled the trigger, but Williams had the pistol set on an empty chamber. Tr. at 170. After Brooks refused to return Williams's property, Williams left the bar, went to his car, and retrieved his shotgun. Tr. at 172. Williams testified that he reentered the Dew Drop from the back entrance, and demanded that Brooks return the pistol. Tr. at 174. According to Williams, Brooks made a "quick motion" towards the bar,

which Williams construed as reaching for the pistol; Williams related that the quick motion caused him to "jump" and "the gun went off." Tr. at 174–75. Williams testified that people jumped up and ran towards him—one person wielded a pool cue—and Williams fired again, thinking that he was firing into the ceiling. Tr. at 175–76.

On December 29, 1986, Williams was found guilty of murder after a bench trial. Tr. at 250. After unsuccessfully pursuing a direct appeal and post-conviction relief, Williams filed this petition for a writ of habeas corpus, raising the following issues: (1) insufficient evidence supported a conviction for murder, rather than voluntary manslaughter; (2) ineffective assistance of counsel at trial; (3) ineffective assistance of counsel on appeal; and (4) various actions by the prosecution violated his right to due process. The respondent moves for denial of the writ, arguing that Williams procedurally defaulted his claims, and that the petitioner's claims are meritless in any event. Although we find that procedural default does not preclude us from considering Williams's claims, we deny habeas relief on the merits.

## II. Procedural Default

■ The State argues that Williams failed, in the post-conviction proceedings, to file a timely petition for leave to appeal to the Illinois Supreme Court. The State points out that the appellate court affirmed the denial of post-conviction relief on March 21, 1994; because Williams filed a notice of intent to file a petition for leave to appeal on April 4, 1994, he obtained 35 days from March 21, 1994, pursuant to Ill.S.Ct.R. 315(b), to file the petition. The State reasons that, because Williams did not file the petition for leave to appeal until May 31, 1994, Williams procedurally defaulted his claims.

It is generally true that a habeas petitioner's "failure to present constitutional claims before the highest state court will result in a procedural default unless the petitioner can show cause and prejudice." *Mason v. Gramley*, 9 F.3d 1345, 1347–48 (7th Cir.1993). However, the record discloses that Williams did indeed file a timely petition for leave to appeal to the Illinois Supreme Court. As the

respondent points out, Williams filed a notice of intent to file a petition for leave to appeal on April 4, 1994; but, on April 20, 1994, Williams apparently also filed a motion for extension of time to file a petition for leave to appeal. Pet.'s Request to Admit Evidence, Ex. 3 (R. 23, docketed Apr. 20, 1995). According to Williams, and unrebutted by the State, the motion was granted. Indeed, Williams proffers a letter, dated a few days after Williams filed his petition for leave to appeal, from the Clerk of the Illinois Supreme Court. The letter stated that the Clerk "has filed your petition for leave to appeal" and "[y]our petition will be presented to the Court for its consideration." Pet.'s Request to Admit Evidence, Ex. 3. In addition, the Illinois Supreme Court "denied" the petition for leave to appeal, rather than dismiss it as untimely. Pet.'s Mot., Ex. 11 (unpublished order) (No. 95–77322, Oct. 6, 1994). In light of the record, and the respondent's failure to reply to Williams's assertions, we conclude that Williams did not procedurally default by filing an untimely petition for leave to appeal during his post-conviction proceedings.

■ We observe, however, that the State entirely fails to argue that the petitioner procedurally defaulted claims that he failed to raise on direct appeal. *See* State's Answer at 5–6. In support of its procedural default position, the State only advances the (unsuccessful) argument that Williams failed to file a timely petition for leave to appeal in the post-conviction proceedings. However, it appears that Williams failed to raise on direct appeal most of the claims that he presents now; indeed, on direct appeal, the petitioner solely argued that the evidence was insufficient to support a murder conviction, rather than voluntary manslaughter. *See* Pet.'s Mot., Ex. 2. Williams would have been procedurally barred in post-conviction and federal habeas proceedings from raising those claims that could have been brought on direct appeal. *Cruz v. Warden of Dwight Cor-*

rectional Center, 907 F.2d 665, 670 (7th Cir. 1990) (citing *Gornick v. Greer,* 819 F.2d 160, 161 (7th Cir.1987)). But the respondent fails to make this argument, and thus "waived waiver." *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991) (citing cases in which State failed to raise waiver argument).[1] Accordingly, we proceed to consider the petitioner's claims on the merits.

## III. Constitutional Claims

### A. Insufficiency of the Evidence

■ The petitioner argues that insufficient evidence supported the murder conviction; instead, the petitioner asserts, the state trial court should have rendered a verdict of voluntary manslaughter. As pertinent in this case, a person commits murder if he "kills an individual without lawful justification ... [and] intends to kill or do great bodily harm to that individual ..., or knows that such acts will cause death to that individual...." Ill.Rev.Stat. ch. 38, ¶ 9–1(a)(1) (1985). Williams maintains that the evidence showed that he was angry when he shot John Brooks. In the words of the voluntary manslaughter statute,[2]

> A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a *sudden and intense passion* resulting from serious provocation by: (1) The individual killed.... Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

Ill.Rev.Stat. ch. 38, ¶ 9–2(a) (emphasis added). According to the petitioner, his anger constituted a "sudden and intense passion."

■ In a federal habeas proceeding, we review a state conviction against a claim of insufficient evidence by asking "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

1. Arguably, the Illinois appellate court did not rely on procedural default in affirming the trial court's denial of Williams's post-conviction petition, and thus Williams claims would not be procedurally defaulted here, *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593–94, 115

L.Ed.2d 706 (1991), but we need not address that question because the respondent waived waiver.

2. The Illinois state legislature replaced voluntary manslaughter with second-degree murder effective July 1, 1987. 720 ILCS 5/9–2 (1993).

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *Chandler v. Richards*, 935 F.2d 915, 917 (7th Cir.1991) (holding that applying the *Jackson* standard in a federal habeas proceeding is consistent with the presumption of correct state court factfinding mandated by 28 U.S.C. § 2254(d)). We will not reweigh the evidence or reevaluate credibility of witnesses unless the evidence is " 'contrary to the laws of nature ... or is so improbable on its face that no reasonable factfinder could accept it.' " *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir.1994) (quoting *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied*, 506 U.S. 1070, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993)).

We hold that sufficient evidence supported the murder conviction. A rational trier of fact could readily find that the petitioner intended to kill John Brooks; Williams exited the bar, retrieved the shotgun, and shot Brooks. Moreover, the trial court rationally rejected Williams's position that he acted under a "sudden and intense passion resulting from serious provocation" by Brooks. Witnesses who spent the evening at the Dew Drop uniformly testified that Brooks did not threaten Williams. Tr. at 28–29, 67, 236. In addition, when the petitioner shot Brooks, the victim was holding his hands in the air and imploring Williams to discuss the matter. Tr. at 19, 64, 231–32. The trial court could rationally credit this testimony and discount Williams's version of the events. Sufficient evidence supported the murder conviction.[3]

### B. Ineffective Assistance of Trial Counsel

 Next, the petitioner complains that his trial counsel rendered ineffective assis-

tance of counsel in violation of the Sixth Amendment. In order to find ineffective assistance of counsel, we must find both that "counsel's performance was deficient" and that the "performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). When determining whether trial counsel engaged in a constitutionally deficient performance, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. We make this determination in light of all the circumstances and as of the time of the allegedly deficient conduct. *Id.* at 690, 104 S.Ct. at 2066. Decisions that " 'might be considered sound trial strategy' " do not constitute ineffective assistance of counsel. *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). As for the prejudice requirement, there must exist a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* at 694, 104 S.Ct. at 2068.

 In light of these principles, we conclude that Williams received effective assistance of counsel, notwithstanding the catalog of allegedly deficient failures presented by Williams. The petitioner primarily criticizes trial counsel's purportedly feeble use of Williams's voluntary intoxication as a defense theory. Under Illinois law at the time of the petitioner's conviction, voluntary intoxication did not excuse a defendant from criminal responsibility unless the intoxication "[n]egative[d] the existence of a mental state which is an element of the offense." Ill.Rev.Stat. ch. 38, ¶ 6–3(a) (1985). Voluntary intoxication is "simply an affirmative defense

---

**3.** The petitioner also seems to claim that the trial court *actually* found that Williams acted with the "sudden and intense passion" required to reduce the murder conviction to voluntary manslaughter. Williams points to the trial court's explanation of the verdict at the end of trial: "The testimony showed proof beyond a reasonable doubt that this was murder. The testimony was overwhelming, and there was no self-defense involved. There was no voluntary intoxication. This was just murder, maybe with *hot blooded* murder rather than cold blooded murder." Tr. at 250 (emphasis added). The petitioner equates

the trial court's reference to "hot blooded murder" with the requisite "sudden and intense passion." However, the trial court later explained this reference at sentencing: "I meant by that that he was angered at the time. But he had plenty of time to reflect.... And it was not an act of sudden and intense passion resulting from serious provocation." Tr. at 256. Accordingly, the trial court entered a conviction of murder. We thus reject, as unsupported by the record, the petitioner's claim that the trial court found otherwise.

which, in and of itself, is an insufficient mitigating factor to reduce the crime of murder to voluntary manslaughter." *People v. Smith*, 124 Ill.App.3d 720, 79 Ill.Dec. 920, 923, 464 N.E.2d 824, 827 (1984). Rather, "drunkenness may contribute to a sudden and intense passion." *Id.*

The petitioner's trial counsel did in fact argue that intoxication contributed to a "sudden and intense passion." On cross-examination, trial counsel attempted to elicit, often successfully, lay opinions reflecting Williams's drunkenness, Tr. at 48–49, 79, 108–09, and trial counsel asked Williams on direct examination how many drinks he consumed and what his mental state was at the time of the shooting, Tr. at 157–59, 167, 177. In closing argument, trial counsel emphasized "the effects of alcohol on a person as it relates to the very important distinction between voluntary manslaughter and murder." Tr. at 243. We conclude that trial counsel's presentation of the voluntary intoxication defense "fell within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.[4]

■ Next, the petitioner asserts that trial counsel failed to impeach Brenda Brooks[5] regarding her testimony that she saw a pistol in Williams's waistband, and that John Brooks snatched the pistol by approaching Williams from behind. According to the petitioner's version of the events, John Brooks obtained the pistol after kicking Williams. We discern no deficient performance by counsel on this point. On cross-examination, trial counsel elicited an admission from Brenda Brooks that, in contrast to her direct testimony, she had not told the police that she saw a "gun" in Williams's waistband; rather, she reported to the police that she

saw a "bulge." Tr. at 35–36. This successful impeachment of Brenda Brooks provides no reason for finding ineffective assistance.

■ In addition, the petitioner alleges that trial counsel failed to object to numerous acts perceived by the petitioner as prosecutorial misconduct. Williams first claims that the prosecution improperly vouched for the credibility of its witnesses during closing argument. While it is true that an attorney may not vouch for a witness's truthfulness, the petitioner does not point to any specific improper vouching, and our review of the closing argument reveals that the prosecution's comments regarding the witnesses' credibility " 'reflect[ed] reasonable inferences from the evidence adduced at trial rather than personal opinion,' " and thus did not violate the rule against vouching. *Rodriguez v. Peters,* 63 F.3d 546, 564 (7th Cir.1995) (quoting *United States v. Goodapple,* 958 F.2d 1402, 1410 (7th Cir.1992)). Accordingly, the absence of an objection did not constitute ineffective assistance.

■ Williams also criticizes trial counsel for failing to object when the prosecution "misconstrued the law to the trial judge" and made "[h]ypothetical remarks as to what the Petitioner [did]." Pet.'s Mot. at 6A. Again, Williams fails to specify the unfair statements of which he complains, and we discern none among the legitimate arguments and inferences expressed by the prosecution. In addition, the petitioner asserts that trial counsel failed to object to the State's use of a lay witness to render an expert opinion; however, trial counsel did indeed object to the question, Tr. at 92. In any event, the context of the question reveals that, by asking the witness whether Williams knew what he was doing, the prosecution merely sought

---

4. We note that, even if trial counsel's presentation of the voluntary intoxication defense was somehow constitutionally defective, the petitioner suffered no prejudice. The prosecution "usually succeeds in overcoming the [intoxication] defense in two ways: by demonstrating through the accused's own testimony that he or she recalls details before, during, and after the offense; or by offering ample evidence of the accused's purposeful actions." *United States ex rel. Burns v. Haws,* 717 F.Supp. 600, 608 (N.D.Ill.1989) (citations omitted), *aff'd without op.,* 907 F.2d 152 (7th Cir.1990). At the petitioner's trial, the

testimony showed both that Williams recalled the events, Tr. at 156–77, and that Williams took purposeful actions throughout the evening, such as disposing of the shotgun and shells after the shooting, Tr. at 176. There exists no reasonable probability that the trial's outcome would have been different.

5. The petitioner also boldly asserts that Meyers, Johnson, and Thorn committed perjury, but points to no specific allegation. Pet.'s Mot. at 6A, Pet.'s Resp. at 32.

to clarify the witness's prior testimony that Williams was a "little drunk" at the time of the shooting. Tr. at 91–92.

■■■■ Lastly, the petitioner alleges that trial counsel failed to object to evidence, and should have moved to suppress it, recovered from the petitioner's car prior to Williams's consent to the search. Specifically, the police found Williams's watch in his car, which contradicted Williams's story that John Brooks removed Williams's watch after kicking him. But where an ineffectiveness claim is based on "the attorney's failure to file a motion to suppress evidence from an illegal search pursuant to the Fourth Amendment, the petitioner must also prove that the Fourth Amendment claim has merit." *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995). The police searched Williams's car after his arrest, and thus the search constituted a valid inventory search. *Colorado v. Bertine*, 479 U.S. 367, 372–73, 107 S.Ct. 738, 741–42, 93 L.Ed.2d 739 (1987).

In sum, the petitioner received effective assistance of counsel because trial counsel did not render a constitutionally deficient performance. Even if trial counsel's performance was deficient, the petitioner was not prejudiced. We reject ineffective assistance of trial counsel as a reason for granting habeas relief.

### C. Ineffective Assistance of Appellate Counsel

■■■■ In support of the ineffective assistance of appellate counsel claim, the petitioner focuses on appellate counsel's (the State Appellate Defender) failure to raise ineffective assistance of trial counsel (the petitioner's retained attorney). In deciding whether appellate counsel's failure to raise specific issues constituted constitutionally deficient performance, we analyze whether the issues were "(1) obvious, and (2) clearly stronger than the ones raised." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir.1994). On

Williams's direct appeal, appellate counsel presented one issue: insufficient evidence supported the murder conviction, and the evidence instead supported only voluntary manslaughter. However, because trial counsel rendered effective assistance of counsel, appellate counsel did not perform deficiently by failing to raise the ineffective assistance of counsel issue.

The petitioner also criticizes appellate counsel for failing to challenge allegedly perjured testimony; this criticism repeats one of the petitioner's complaints against trial counsel, and Williams still fails to specify the perjured testimony. Lastly, the petitioner points out that a third year law student assisted appellate counsel, and argues that appellate counsel "failed to double check her third year law student's work, which practically copied Petitioner's Motion For New Trial." Pet.'s Mot. at 6B. There exists no basis for Williams's assertion that appellate counsel did not check the student's work, and the appellate brief and motion for new trial are patently different. *Compare* Pet.'s Mot., Ex. 2 *with* Pet.'s Mot., Ex. 3. We hold that the petitioner received effective assistance of appellate counsel.[6]

### D. Due Process Claims

■■■■ Finally, the petitioner maintains that he was denied due process by several defects in the trial. Mostly, the petitioner reiterates claims raised in support of his ineffective assistance of trial argument: the prosecution improperly vouched for the witnesses' credibility, misstated the law, and improperly made hypothetical remarks. As discussed above, *see supra* Part III(B), we hold that the prosecution's actions did not deprive Williams of due process. In addition, the petitioner contends that the prosecution inappropriately asserted during closing argument that Williams "lied." Yr. at 241–42. However, the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony, and thus did not deprive Williams of due process. *United*

---

**6.** We note that the petitioner seems to argue that appellate counsel was ineffective because counsel failed to point out that Williams was wrongfully convicted of two murders rather than one. Apparently, Williams erroneously believes that he received two murder convictions simply because

a murder count with a lesser *mens rea* was merged into the murder count charging intent to kill. The petitioner's "Order of Sentence and Commitment" clearly lists only one murder conviction. Pet.'s Mot., Ex. 1.

*States v. Allison,* 59 F.3d 625, 628 (7th Cir. 1995).

Finally, the petitioner alleges that the trial judge relied on perjury, failed to consider all the evidence, and failed to apply the statutory definition of voluntary manslaughter. Williams fails to identify and prove the purported perjury, and we have already held that sufficient evidence supported the murder conviction, *see supra* Part III(A). We hold that the petitioner was accorded due process.[7]

### IV. Conclusion

For the reasons set forth above, we deny Williams's petition for a writ of habeas corpus.[8] It is so ordered.

---

7. In support of his habeas petition, Williams also obscurely refers to ineffective assistance of post-conviction counsel and violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As to the former claim, there exists no right to counsel in state collateral proceedings after pursuing direct appeals, *Coleman v. Thompson,* 501 U.S. 722, 756, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991). As to the *Brady* claim, there is no factual basis for Williams's claim that the prosecution withheld evidence proving that witnesses committed perjury.

8. We also deny as moot the following motions filed by the petitioner: motion for production under Fed.R.Civ.P. 34 (R. 24, docketed Apr. 20, 1995); motion for admissions under Fed.R.Civ.P. 36 (R. 25, docketed Apr. 20, 1995); motion for leave to reply to respondent's reply (R. 33, docketed June 14, 1995); and motion for an evidentiary hearing, styled as a "writ of habeas corpus ad testificandum" (docketed Oct. 11, 1995).