16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Louis R. SUMMERS, Petitioner-Appellant,
v.
George WELBORN, Respondent-Appellee.
 No. 92-2376.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 7, 1994.*
Decided Feb. 8, 1994.
Rehearing Denied Feb. 2, 1995.
 
 Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 A jury in the State of Illinois found Louis Summers guilty of murder in the first degree for causing the death of his 19 month-old stepson by striking him in the head. Summers appealed his conviction arguing that the jury instructions given for first degree murder and involuntary manslaughter improperly informed the jury that if they found Summers guilty of both first degree murder and involuntary manslaughter, they should return only a verdict of first degree murder.[1] Because Summers did not object to the instruction at trial, the Illinois Appellate Court addressed the merits of the claim under a plain error analysis. People v. Summers, 559 N.E.2d 1133, 1139-40 (Ill.App.Ct.1990). The court ruled that the mental state necessary to sustain a conviction for involuntary manslaughter is less culpable than, and mutually inconsistent with the mental state necessary to sustain a conviction for murder. Id. at 1140 (citing People v. Hoffer, 478 N.E.2d 335, 340 (Ill.1985)). Because it is legally impossible for a jury to find a defendant guilty of both offenses, the court found the instruction suggesting this possibility erroneous. Id. at 1142-43.
 
 
 2
 After reading from the Illinois Pattern Jury Instructions, the trial court explained:
 
 
 3
 In other words, ladies and gentlemen, there are three forms of verdict. Only one of these should be signed by all of you. As I have stated, involuntary manslaughter is an included offense, which means the elements of involuntary manslaughter are included in murder, and so if, in theory, you should find him guilty of murder, that would necessarily mean under the law not guilty of involuntary manslaughter and not vice versa. If he were guilty of involuntary manslaughter, he would necessarily be not guilty of murder, and then you have the not guilty form if you find that he is not guilty of either of those offenses.
 
 
 4
 Id. at 1141. This addendum to the instruction accurately explains the distinction between the two offenses charged. Because the subsequent instruction correctly instructed the jury on the proper procedure to follow, the state appellate court ruled that it vitiated the previous erroneous instruction. When coupled with the fact that the prosecutor properly explained the elements of the offense in his closing argument and the absence of any indication that the jury in fact found the defendant guilty of both offenses, the court concluded that the erroneous instruction did not rise to the level of plain error and so affirmed Summers' conviction and sentence.[2] Id. Leave to appeal was denied by the Illinois Supreme Court. People v. Summers, No. 70872 (Ill.S.Ct. Dec. 4, 1990). Summers did not pursue a petition for collateral relief in state court, nor was there direct precedent requiring him to do so. Mason v. Gramley, 9 F.3d 1345 (7th Cir.1993). Finding a harmless error analysis appropriate in cases of jury instruction error, Rose v. Clark, 478 U.S. 570, 579, 106 S.Ct. 3101 (1986), the district court concluded that the evidence adduced at trial established guilt beyond a reasonable doubt; and therefore denied Summers' petition for habeas relief.[3] Summers v. Welborn, No. 91-3209 at 3 (C.D.Ill. April 27, 1992).
 
 
 5
 Petitioner concedes that the subsequent oral instruction was a correct statement of the law. See Appellant's Br. at 20 & 23. He argues, however, that it did not cure the constitutional defect created by the erroneous instruction, but rather served only to confuse the jury. We agree that the trial judge may have vitiated the initial error by correctly instructing the jury that they could find the defendant guilty of either murder or involuntary manslaughter or they could find him not guilty. But the error was reinstated when the written pattern jury instructions, which contained the error, were given to the jury to take with them during deliberation. This raises the question as to what effect, if any, the jury's examination of the written instructions may have had on the verdict. Cf. Gacy v. Welborn, 994 F.2d 305, 307-08 (7th Cir.) (affirming denial of habeas petition; where correct written instructions were available to resolve any potential confusion created by misstatement in oral instructions), cert. denied, 114 S.Ct. 269 (1993); Wood v. Marshall, 790 F.2d 548, 551 (6th Cir.1986) (no constitutional error where trial judge gave contradictory oral instructions, but written instructions correctly stated burdens on insanity defense), cert. denied, 479 U.S. 1036 (1987).
 
 
 6
 In collateral proceedings involving erroneous jury instructions, the error will be deemed harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239 (1946)). Under this standard, it is not enough to show that there is a reasonable probability that the error contributed to the jury's verdict; rather the petitioner must establish that the error resulted in actual prejudice. Id. An erroneous jury instruction will rise to the level of a constitutional violation if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 112 S.Ct. 475, 482 (1991) (citing Cupp v. Naughten, 414 U.S. 141 (1973)). In reviewing an ambiguous instruction, it "may not be judged in artificial isolation" but rather must be considered in the context of the record as a whole. The key focus of the inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the constitution." Id. As applied to this case, the question is whether it is "reasonably likely" that the jury relied on the erroneous portion of the written instruction in a manner that "had substantial and injurious effect or influence" in determining the verdict.
 
 
 7
 The element distinguishing murder from involuntary manslaughter is the mental state of the accused. People v. Presley, 595 N.E.2d 606, 611 (Ill.App.Ct.1992). Murder requires evidence that the accused either intended to kill or knew of the strong possibility that death would result from his acts. 720 ILCS 5/9-1 (Supp.1993). Involuntary manslaughter, on the other hand, is committed when the actor consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm. 720 ILCS 5/9-3 (Supp.1993). The distinction between murder and involuntary manslaughter then is the degree to which the defendant is aware that the acts performed risk death or great bodily harm. Alvarez v. McGinnis, 4 F.3d 531, 536 (7th Cir.1993) (citing People v. Bartall, 456 N.E.2d 59, 65 (Ill.1983). Cf. People v. Rosenberger, 466 N.E.2d 608, 617 (Ill.App.Ct.1984) (given differing degrees of awareness involved, not-guilty on involuntary manslaughter but guilty on murder were not inconsistent verdicts).
 
 
 8
 When read it in its entirety the pattern jury instruction is not wholly erroneous; but simply is internally inconsistent. It begins correctly by instructing in the disjunctive: "Under the law, a person charged with First Degree Murder may be found not guilty, or may be found guilty of First Degree Murder, or guilty of Involuntary Manslaughter." The instruction continues: "You are to decide based upon the evidence and the law in this case whether to return a verdict of not guilty, a verdict of guilty of First Degree Murder, or a verdict of Involuntary Manslaughter." Summers, 559 N.E.2d at 1139 (quoting Illinois Pattern Jury Instructions, Criminal, No. 26.01Q, at 367-68 (2d ed. Supp.1989), read by the judge to jury) (emphasis added). The instruction ends, however, by erroneously instructing: "if you find the State has proved the defendant guilty of both First Degree Murder and involuntary Manslaughter, you should select the verdict form finding the defendant guilty of First Degree Murder...." It seems likely that at least some juror must have recognized this inconsistency and in attempting to resolve the confusion realized that the erroneous portion of the written instruction was at odds with all other information received, including the correct oral charge given by the judge as well as the explanation of the elements of the offense provided by the prosecutor in closing argument. When all is taken together, it is reasonable to conclude that the jurors would have recognized the inconsistency and, drawing on common sense, would have understood that one cannot both be aware of the risks posed by his conduct while at the same time acting in conscious disregard of those risks. Summers has asserted no facts or arguments that causes us to doubt this conclusion or to convince us that he has suffered prejudice as a result of the erroneous instruction. We therefore conclude that the erroneous jury instruction did not "substantially effect or influence" the jury's verdict so as to entitle Summers to habeas relief.
 
 
 9
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Petitioner-Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 This instruction charged the jury: "if you find the State has proved the defendant guilty of both First Degree Murder and Involuntary Manslaughter, you should select the verdict form finding the defendant guilty of First Degree Murder and sign it as I have stated. Under these circumstances, do not sign the verdict form finding the defendant guilty of Involuntary Manslaughter." See Illinois Pattern Jury Instructions, Criminal No. 26.01Q, at 367-69 (2d ed. Supp.1989). It is unclear whether the pattern jury instruction which was read to the jury was also given in writing to the jury during deliberations. The Illinois Appellate Court's opinion does not discuss this. However, there is evidence in the transcript which suggests that the erroneous written instructions did go to the jury room. During closing argument the prosecutor explained: "Judge is going to read to you instructions. That is the law. He is going to read all of them to you and then he is going to give all of them to you and you're going to take them back to the jury room." Tr. 51
 
 
 [2]
 Because the state appellate court--the last state court to render an opinion on this issue--reached the merits without alternatively asserting forfeiture as an independent state ground for its decision, the issue remains open for review under Sec. 2254. Jenkins v. Gramley, 8 F.3d 505, 507 (7th Cir.1993)
 
 
 [3]
 There appears to be a question whether Summers has procedurally defaulted on this issue. Section 2254 requires that a petitioner "fairly present" his federal constitutional claim to the state courts. Verdin v. O'Leary, 972 F.2d 1467, 1472-73 (7th Cir.1992). The Illinois Appellate Court's opinion does not indicate that Summers presented the claim raised in his habeas petition, i.e., that the jury instruction error deprived him of a fundamentally fair trial. Nor has the petitioner requested that the state court record be transmitted, thereby precluding a review of papers filed before that court. Nonetheless, the State has not asserted the issue of fair presentment and so has waived the waiver. Henderson v. Thieret, 859 F.2d 492, 496-98 (7th Cir.1988), cert. denied, 490 U.S. 1009 (1989)