Marco ALVAREZ, Petitioner–Appellant,

v.

Kenneth L. McGINNIS, et al., Respondents–Appellees.

No. 92–2707.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1993.

Decided Sept. 10, 1993.

532

Susan G. Feibus (argued), Louis B. Garippo, Kane, Obbish, Propes & Garippo, Chicago, IL, for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Steven J. Zick (argued), Criminal Appeals Div., Chicago, IL, for respondents-appellees.

Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Marco Alvarez shot and killed Henry Vieyra on January 19, 1985. After a trial, a jury convicted him of murder, and he received a thirty-eight-year sentence. The Illinois Appellate Court affirmed his conviction and later denied his petition for rehearing. Subsequently, the Illinois Supreme Court denied his Petition for Leave to Appeal. Alvarez then filed a petition for relief under 28 U.S.C. § 2254. The district court denied his petition. We affirm.

I.

The facts of Alvarez's criminal case are recounted in the opinion of the state appellate court, *see People v. Gutirrez,* 205 Ill. App.3d 231, 151 Ill.Dec. 395, 564 N.E.2d 850 (1st Dist.1990), *appeal denied,* 136 Ill.2d 548, 153 Ill.Dec. 378, 567 N.E.2d 336 (1991),[1] and

---

1. Although the defendant's name is Marco Alvarez, both the indictment and the appeal bore the name Victor Gutirrez. The misnomer was the result of Alvarez's carrying a borrowed driver's license at the time of his arrest.

do not bear extensive repetition here. Briefly, Alvarez, who was out bar-hopping, arrived at the Shyway Lounge, a social club, sometime after 4:00 a.m. on January 19. Alvarez recognized Henry Vieyra by his face. According to Alvarez's testimony, Vieyra was making hostile eye contact with Alvarez, bobbing his head in a challenging fashion, and the like. Around 6:00 that morning, Vieyra exited the Lounge into a bitterly cold dawn and headed for a friend's car. Alvarez, who had left a few moments before, was sitting on the passenger's side of a gold Cadillac cruising along a street outside the Lounge when he spotted Vieyra standing beside a parked car. The Cadillac slowed so that Alvarez could "ask this man what his problem was." Apparently, Vieyra placed his right hand into his coat as Alvarez lowered the window. Alvarez grabbed a .38 off the floor of the Cadillac and shot Vieyra in the back. At trial, Alvarez acknowledged that he shot Vieyra but contested whether he had the requisite intent to sustain a murder conviction.

■ In his preliminary argument, Alvarez contends that repeated acts of prosecutorial misconduct deprived him of a fair trial. To violate a defendant's constitutional due process rights, prosecutorial misconduct must poison the entire atmosphere of the trial. *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). A criminal conviction is "not to be lightly overturned on the basis of a prosecutor's comments standing alone" in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); *see also Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (only prosecutor's comments that "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process" result in constitutional violation). We will reverse a conviction for serious prosecutorial misconduct, however, unless the State can show that the error was harmless beyond a reasonable doubt. *Pirovolos*, 844 F.2d at 425 (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Accordingly, even in cases of extreme misconduct, a reviewing court examines the entire record to determine whether the defendant received a fair trial. *See United States v. Mazzone*, 782 F.2d 757, 763 (7th Cir.), *cert. denied*, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986).

■ During the course of the trial, Alvarez took the position that he had no motive to kill. By his own testimony, he did not carefully aim the gun and he fired only a single shot. Based on his theory that his conduct was merely reckless, Alvarez sought a conviction for the lesser offense of involuntary manslaughter. From start to finish, the prosecution aggressively challenged the defense strategy. Most troubling in this regard was the prosecutor's attempt to characterize the incident in question as an accident. A representative exchange with Alvarez unfolded as follows:

Q: And you didn't wait to see Mr. Vieyra fall, did you?

A: I seen him go on the floor, yes.

Q: You saw him fall?

A: Yes.

Q: Well, then if you saw him fall, it might have been an accident, right?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

BY THE PROSECUTOR:

Q: Well, did you see him fall?

A: I seen him.

DEFENSE COUNSEL: Objection.

THE COURT: Asked and answered.

BY THE PROSECUTOR:

Q: Well, when you saw him fall, did you get out of the car and try to help him?

A: I couldn't get out of the car.

Q: Well, did you ask your partner to get out of the way so you could get out of the car?

A: No, I didn't.

Q: Did you call the police?

A: No, I didn't.

Q: Did you call an ambulance and say I accidentally shot someone?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained. [sic]

Tr. at 633–34. On at least three other occasions during his cross examination of Alvarez, the prosecutor attempted to characterize the incident as an accident. *See* Tr. at 636, 639. As the excerpt reflects, defense counsel objected to each instance. The court sustained all of these objections and ultimately warned the prosecutor away from the line he was pursuing. Nonetheless, the prosecutor tried to return to this theme during the rebuttal portion of closing argument. *See* Tr. at 731, 733. Once again, defense counsel raised an objection, which the court duly sustained.

Additionally, Alvarez objects to a series of comments by the prosecutor during rebuttal argument on the grounds that they improperly inflamed the passions of the jury. First, the prosecutor attempted to portray Alvarez as "a pro," a "Mafia hit man," who "doesn't go anyplace without a gun" and "hits the target right on the money." Tr. at 722–24. Because the prosecution had offered no evidence that linked Alvarez in any way with organized crime or otherwise suggested he was a professional gunman making a hit, the inference the prosecutor attempted to draw was not fair. Second, the prosecutor improperly broached the subject of the severity of the crime by telling the jury that involuntary manslaughter is the "lowest class of felony." Tr. at 729.

Both the Illinois Appellate Court and the district court condemned the prosecutor's conduct in the strongest possible terms. Indeed, it would be difficult to portray the conduct of the prosecutor in a favorable light. No specific testimony of Alvarez invited the prosecution's pursuit of the accident theory. Perhaps as an initial matter, the prosecutor may have been struggling to find a substitute for "accident." His repeated usage of the term, however, reflects behavior that comes perilously close to mocking the trial rather than the defendant's position. On the other hand, the inappropriate comments were confined to a few brief instances in a lengthy transcript, and defense counsel reacted immediately to the tactics of the prosecution. Moreover, the court consistently sustained the objections and regularly counseled the jury to disregard improper argument, which served to amplify the inappropriateness of

those lines of attack. Finally, the prosecutor actually emphasized the specific nature of the defense being offered by arguing against finding Alvarez guilty of involuntary manslaughter at the close of his rebuttal argument.

We agree with the Illinois Appellate Court and the district court that the prosecutor frequently skirted the line of proper argument and occasionally crossed it. Nevertheless, both defense counsel and the court were vigilant in keeping the prosecutor within bounds, and the jury heard the court's admonishments on a number of occasions. Moreover, the evidence against Alvarez was overwhelming. In addition to gun powder residue found on both of Alvarez's hands, at least three eye witnesses testified for the State about the circumstances surrounding Vieyra's demise. Most importantly, Alvarez himself, who could offer the most convincing testimony as to his state of mind, conceded that he was not in danger when he fired the weapon. In light of this substantial evidence, a reasonable jury could find that the defendant acted intentionally rather then recklessly. Consequently, we are unable to conclude that the improper comments of the prosecutor deprived Alvarez of a fair trial.

## II.

In his second argument, Alvarez asserts a violation of his due process rights because the juxtaposition of the murder and the involuntary manslaughter instructions would permit the jury to find him guilty of murder even if his conduct was only reckless. Initially, the State maintains that Alvarez did not properly present this claim to the Illinois Appellate Court. Although Alvarez did identify this claim in his Petition to the Illinois Supreme Court, he missed an earlier opportunity to do so in the initial appeal from his conviction.

Grounded in principles of comity, the general requirement of exhaustion mandates that a federal claim be "fairly presented" to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). A claim is not fairly presented if done for the first time in a

procedural context in which the reviewing court exercises only discretionary review. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (citations omitted). In *Castille,* the habeas petitioner had raised a number of his claims for the first time in his petition for allocatur to the Pennsylvania Supreme Court. Under the Pennsylvania Rules of Appellate Procedure, a reviewing court would not reach the merits unless "there are special and important reasons therefor." Pa.R.App.Proc. 1114 (quoted in *Castille,* 489 U.S. at 351, 109 S.Ct. at 1060). The Supreme Court concluded that the petitioner's failure to present those claims prior to his allocatur petition fell short of the requisite exhaustion of his state remedies. The State has not argued the corresponding Illinois rule, *see* Ill.Sup.Ct.R. 315. Moreover, it has conceded that returning to the state court would be "futile," by which the State apparently means that the alleged default now bars Alvarez from raising this claim in collateral proceedings under the Illinois Post–Conviction Act, Ill.Rev.Stat., ch. 38 ¶ 122–1 *et seq.* (1990). Given our determination of the merits of this claim, we can assume without deciding that the juxtaposition issue was properly presented in state court.

Based on Alvarez's theory of defense, the jury received instruction on both murder and involuntary manslaughter. Whereas the murder instruction mandates that the State prove Alvarez acted intentionally, the involuntary manslaughter instruction requires that the conduct proved be reckless.[2] According to Alvarez, this latter instruction, following close on the heels of the murder instruction, confused the jury by allowing it to find him guilty of murder even if his conduct was only reckless. Alvarez is asking us to extend the rule we announced in *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990),

to the present circumstances. In *Falconer,* this court held that the combination of the Illinois pattern murder and voluntary manslaughter jury instructions violated due process "because the jury may have been left with the false impression that it could convict petitioner of murder even if she possessed one of the mitigating states of mind described in the manslaughter instructions." *Id.* at 1136. *Falconer* itself derived much of its force from the decision of the Illinois Supreme Court in *People v. Reddick,* 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988).

In *Reddick,* the Illinois Supreme Court held that a jury given the option of convicting for voluntary manslaughter in a murder prosecution must be instructed that the State has the burden of disproving beyond a reasonable doubt the mitigating factor raised by the defendant. *Id.* 122 Ill.Dec. at 6, 526 N.E.2d at 146. A person who commits voluntary manslaughter, in addition to intending to kill or knowing that his conduct would result in death, is acting under a sudden and intense passion provoked by another or with an unreasonable belief that his conduct is justified. Ill.Rev.Stat. ch. 38, ¶¶ 9–1, 9–2 (West Supp.1992). These mitigating factors do not affect the elements of murder. In other words, voluntary manslaughter turns on belief rather than intent. *People v. Almo,* 108 Ill.2d 54, 90 Ill.Dec. 885, 887, 483 N.E.2d 203, 205 (1985). The presence of an additional belief serves to mitigate the conduct. Accordingly, the Illinois Supreme Court decided that these mitigating factors are to be treated as affirmative defenses; the State has the burden of disproving them beyond a reasonable doubt whenever the defendant presents some evidence of their existence. *Reddick,* 122 Ill.Dec. at 6, 526 N.E.2d at 146.

---

**2.** Illinois Pattern Instruction, Criminal Instruction Number 7.02, Tr. at 745, reads as follows:
To sustain a charge of murder, the State must prove the following propositions:
First: That the defendant performed the acts which caused the death of Henry Vieyra; and
Second: That when the defendant did so, he intended to kill or do great bodily harm to Henry Vieyra; or he knew that his act would cause death or great bodily harm to Henry Vieyra; or he knew his acts created a strong

probability of death or great bodily harm to Henry Vieyra.
Illinois Pattern Instruction, Criminal Instruction Number 7.08, Tr. at 748, reads as follows:
First: That the defendant performed the acts which caused the death of Henry Vieyra; and
Second: That the defendant performed those acts recklessly; and
Third: That those acts were likely to cause death or great bodily harm.

 The relationship between murder and involuntary manslaughter, however, is quite different. Involuntary manslaughter requires the distinct mental state of recklessness. Recklessness is not a mitigating factor to be proved in addition to all the elements of murder; it constitutes a separate mental state. Thus, the distinction between murder and involuntary manslaughter is the degree to which the defendant is aware of the risk of death or serious bodily harm. *People v. Bartall*, 98 Ill.2d 294, 74 Ill.Dec. 557, 563, 456 N.E.2d 59, 65 (1983). The Illinois Supreme Court recognized as much in *People v. Lucas*, 132 Ill.2d 399, 139 Ill.Dec. 447, 465, 548 N.E.2d 1003, 1021 (1989) (giving murder and involuntary manslaughter instructions proper because "recklessness and knowledge are mutually inconsistent mental states"). When a prosecutor proves intent or knowledge, he establishes a mental state greater than recklessness. *Cf. People v. Hoffer*, 106 Ill.2d 186, 88 Ill.Dec. 20, 25, 478 N.E.2d 335, 340 (1986). Consequently, in proving knowledge beyond a reasonable doubt, the prosecutor necessarily has disproven mere recklessness (as well as other mental states) beyond a reasonable doubt.

 Alvarez contends that *Lucas* was erroneous; we, however, are precluded from granting habeas relief because a state court committed an error of state law. *Estelle v. McGuire*, 502 U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). And *Lucas* is grounded exclusively in state law. Because that possibility is foreclosed, Alvarez can only assert, by analogy to *Falconer*, a federal due process violation caused by the juxtaposition of the murder and involuntary manslaughter instructions, which prejudiced the defendant by confusing the jury. There are two significant problems with this argument. The first is the rule of thumb that instructional errors of state law generally may not serve as a basis for federal habeas relief. *McGuire*, 502 U.S. at ——, 112 S.Ct. at 483 (inquiry is "whether there is a reasonable likelihood that

the jury has applied the challenged instruction in a way that violates the Constitution") (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990)). The second obstacle is *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). According to *Teague*, "habeas corpus cannot be used as a vehicle to create constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions." *Id.* at 315–16, 109 S.Ct. at 1078.[3]

Alvarez has not attempted to anchor his challenge to the involuntary manslaughter instructions in any pre-existing Supreme Court cases, or any Supreme Court cases at all. He has not identified precedent that answers conclusively whether it violates due process to give an instruction that is reasonably likely to impede the jury's ability to give proper consideration to distinct mental states. Thus, he is asking us to promulgate a new rule. However, Alvarez has not come to terms with how his appeal would fit within one of the *Teague* exceptions. Perhaps he could have cobbled together some cases à la *Falconer* to support his appeal, although this approach is not favored. *See Gilmore v. Taylor*, —— U.S. ——, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). In any event, the path he proposes is steep because of a more fundamental flaw with his argument. Alvarez believes that recklessness constitutes a "mitigating mental condition." Although it is a mental state, recklessness does not "mitigate" in the fashion of an affirmative defense. The relevant distinction between murder and involuntary manslaughter is one of degree rather than kind. As a consequence, the likelihood of confusion rising to the level of a due process violation by a jury simultaneously considering murder and involuntary manslaughter is remote at best.

---

3. The first exception encompasses rules that place " 'primary, private individual conduct[,] beyond the power of the criminal lawmaking authority to proscribe.' " *Id.* at 311, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)). The second embodies "new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313, 109 S.Ct. at 1077. Neither exception applies to the present case.

For the foregoing reasons, the decision of the district court is AFFIRMED.