James G. KAPPOS, Petitioner–Appellant,

v.

Craig HANKS, Respondent–Appellee.

No. 92–3844.

United States Court of Appeals,
Seventh Circuit.

Argued July 7, 1994.

Decided May 2, 1995.

**366**

Marce Gonzalez, Jr., Merrillville, IN (argued), for petitioner-appellant.

Thomas D. Quigley, Office of the Attorney General, Indianapolis, IN (argued), for respondent-appellee.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

James Kappos filed a petition for habeas corpus under 28 U.S.C. § 2254, in which he alleged that his murder conviction was obtained in violation of the Constitution. He raises four issues on appeal: the failure of the trial court to give a cautionary jury instruction, the failure of the prosecution to disclose the terms of a "bounty deal," prosecutorial misconduct and the submission of a jury instruction that, he alleges, improperly relieved the state of its burden of proof.[1]

I.

The evidence at trial established that Kappos hired David Hayes to kill his wife, Charlene Kappos, for five hundred dollars. When Hayes changed his mind and attempted to return the money, Kappos threatened to harm Hayes' family. Hayes subsequently

---

1. Kappos attached "statements" to his brief in which the state's key witness allegedly recanted his testimony. The statements themselves were not presented to the district court, and were not explained there in the context of the issues raised. Therefore, any issue he is attempting to raise with respect to the statements is waived.

killed Charlene Kappos. *Kappos v. State*, 465 N.E.2d 1092 (Ind.1984).

Hayes pleaded guilty to murder and agreed to testify at Kappos' trial in exchange for Hayes' cooperation; the state promised that it would not seek the death penalty for Hayes and would recommend a sentence of not more than forty years. A jury found Kappos guilty. He unsuccessfully appealed his conviction to the Indiana Court of Appeals and the Indiana Supreme Court. Kappos then filed for post-conviction relief in the state courts. The Indiana trial court denied the petition. Kappos appealed to the Indiana Court of Appeals and the Indiana Supreme Court before filing his petition for habeas corpus in the district court.

## II.

### A. Failure to give cautionary jury instruction

■ Kappos argues that the trial court erred by not giving a cautionary instruction on the testimony of Hayes, Kappos' accomplice. Kappos did not request such an instruction, and the court instructed the jury to make its own credibility determination with respect to all the witnesses. Although cautionary "accomplice" instructions are preferred in the federal courts, *see United States v. McCabe*, 720 F.2d 951 (7th Cir. 1983), the failure of a state court to give such an instruction does not rise to the level of a constitutional violation. *United States ex rel. Swimley v. Nesbitt*, 608 F.2d 1130, 1133 (7th Cir.1979). In light of the instructions actually given by the trial court, the lack of an accomplice instruction affords no basis for relief.

### B. Bounty deal

■ Kappos argues that the prosecution made a "bounty deal" with its chief witness, Hayes, under which Hayes' reward depended upon Kappos' conviction. As an initial matter the state asserts that Kappos has procedurally defaulted this claim. On appeal from the denial of Kappos' post-conviction petition, the state appellate court determined that the issue had been waived for failure to raise it in the trial court or on direct appeal. *Kap-*

*pos v. State*, 577 N.E.2d 974, 977 (Ind.Ct. App.1991). Although the appellate court noted its agreement with the trial court's determination that the testimony was not inherently unreliable, the basis for the state appellate decision was waiver, an independent and adequate state ground. *See Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Federal habeas review of this claim is barred in the absence of a showing of cause and prejudice. *Id.* at 750, 111 S.Ct. at 2565. Kappos has not argued cause and prejudice; therefore, this court cannot consider the claim. Even if we could, the claim is without merit. The district court found that the record did not support the notion that the result of Hayes' arrangement with the State or Hayes' sentence hinged on the results of Kappos' trial.

Kappos also argues that the jury should have been informed of the full extent of the plea agreement and that lack of full disclosure of Hayes' obligations to assist the government violated his rights. But the jury was informed that Hayes had entered into a plea agreement whereby he would testify in exchange for a maximum sentence of forty years. However, in any event, this argument was not raised in the district court, and has been waived.

### C. Prosecutorial misconduct

■ Kappos claims that the prosecutor improperly referred to him as a "murderer" and "an artful liar" during closing argument. A prosecutor may not vouch for the credibility of witnesses or express a personal opinion about the guilt of the accused. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Regardless whether the prosecutor's comments are improper, no constitutional violation has occurred unless the "comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)); *see also Alvarez v. McGinnis*, 4 F.3d 531 (7th Cir.1993) (applying harmless error standard of *Chapman v. California*, 386 U.S. 18, 87

S.Ct. 824, 17 L.Ed.2d 705 (1967), instead of *Brecht* ).

■ The jury was presented with two conflicting stories: Hayes contended that Kappos hired him to kill his wife; Kappos asserted that he had nothing to do with the murder and that Hayes killed Charlene Kappos in a fit of jealous rage. Obviously, one witness was lying. Both the prosecution and the defense argued that the witness presented by the other side had lied. As such, the prosecutor's comments, while possibly questionable in form and emphasis, were essentially a commentary on the credibility issue that the jury had to decide. The jurors were instructed to make their own credibility determinations, and in order to arrive at a verdict, they had to choose between conflicting bodies of testimony. The prosecutor's comments did not rise to the level of a constitutional violation.

### D. *Doyle* issue

Although not addressed in counsel's supplemental brief (and effectively waived by counsel at oral argument), another argument involving a purported error of the prosecutor, which was raised by Kappos in his *pro se* brief, may be his most serious point and merits discussion: Kappos argues that the prosecution improperly commented on his refusal to answer questions after he asserted his right to remain silent. During the state's case-in-chief, Detective Burden testified that he and two other detectives went to Kappos' home, advised him of his constitutional rights (R. at 432) and began asking questions, which Kappos answered. The detectives then asked Kappos to accompany them to the police station. At the station Kappos was again advised of his constitutional rights. *Id.* During the state's case-in-chief, Detective Burden testified to what occurred at the station in response to the prosecutor's questions:

Q: Did he finish the form?
A: No, sir.
Q: Why did he not finish filling out the form?
A: I asked that he stop.
Q: Why did you ask him to stop?

MR. KALLENBACH: Object to this, your Honor. He's leading up to an area that is not admissible in evidence.
MR. BERNING: We're not going to get into that.
Q: Why did you ask him to stop?
A: I asked him to cooperate with another part of the investigation.
Q: What happened when you asked him to do that?
A: He grabbed his stomach, said he was sick and wasn't going to cooperate anymore, got up and walked out of the police station.
Q: Did he appear sick to you?
A: No, sir.
Q: Did he ask for a doctor?
A: No, sir.
Q: Did he vomit?
A: No, sir.
Q: Have any trouble walking?
A: No.

(R. at 435). Burden then testified that he returned to Kappos' home approximately two hours later and asked if he could take Kappos' picture. Kappos refused, saying that he had spoken with two attorneys, who had advised him not to cooperate. (R. at 437).

■ *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), insures that, once a defendant has been advised of his constitutional rights, pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), particularly the "right to remain silent," the prosecution may not comment on his silence. This "does not apply to cross-examination that merely inquires into prior inconsistent statements." *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). In reviewing Kappos' claim regarding silence, the state courts determined that no *Doyle* violation had occurred because the comments in question referred to Kappos' *pre-arrest* silence. *See Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (impeachment by the use of pre-arrest silence does not violate the Fourteenth Amendment). But the fact that an arrest had not yet occurred does not render *Doyle* inapplicable.

Although Kappos' comments about his refusal to answer more questions occurred prior to his arrest, they were made *after* he had been given his *Miranda* warnings.' It is then that the promise contained in the statement of *Miranda* rights precludes the prosecutor from commenting on the defendant's silence. *See Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988) (holding that references to pre-arrest, post-*Miranda* silence violated due process). *Miranda* provides that "once warnings have been given ... [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. at 1627; *cf. Davis v. United States*, — U.S. —, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (after waiving right to counsel, defendant may invoke that right by clearly requesting a lawyer). *Doyle* ensures that the defendant may not be sanctioned merely for invoking the right to remain silent. But he certainly may be questioned on what he *said* after receiving *Miranda* warnings. Although Kappos was willing to answer some of the detectives' questions, he invoked his right to remain silent (ostensibly on grounds of illness) when he stated that he would no longer cooperate. Even assuming that Kappos waived some *Miranda* rights by answering some questions, a refusal to continue answering because of illness is not inconsistent with such a purported waiver.

In response to Kappos' *pro se* brief, the state characterized Kappos' refusal to answer questions and his exit from the police station as "actions" not silence. This, however, is a distinction that does not meet the problem. A voiced refusal to cooperate or acts indicating such a refusal are the equivalent of invoking the right of silence, and prosecutors may not comment on them in the circumstances present here.

The state does not argue that the way in which Kappos ended the stationhouse interview amounted to a demonstration that Kappos had not relied on the *Miranda* warning. The state, however, further argues that a prosecutor may comment on the defendant's actions in order to impeach his credibility on cross-examination. Although some of the comments regarding Kappos' refusal to cooperate occurred on cross-examination and during the prosecutor's closing argument, the initial comments on Kappos' actions were made during the state's case-in-chief. This state of affairs would be especially troubling if the defendant had not intended (as he did here) to take the stand, but was forced to testify in order to counter the state's questioning of his silence. Further, the challenged questions on cross-examination were not designed to elicit inconsistent testimony, but were rather intended to highlight Kappos' refusal to answer questions about his wife's murder. *United States v. Hernandez*, 948 F.2d 316, 323 (7th Cir.1991) ("prosecutor asked his question expecting the answer he got—that [the defendant] made no response"). Unlike *Lindgren v. Lane*, 925 F.2d 198 (7th Cir.1991), *cert. denied*, 502 U.S. 831, 112 S.Ct. 105, 116 L.Ed.2d 74 (1991), where the defendant as a witness volunteered that he didn't "wish to say anymore," the prosecutor in the case before us knew what information he wanted the jury to hear and asked questions that would merely bring out Kappos' refusal to speak further on the earlier occasions that we have described.

█ Defense counsel waived this *Doyle* claim, but, we believe, may have done so imprudently because the issues are not simple. But, in any event, the alleged error is harmless. Federal relief pursuant to a petition filed under § 2254 for a *Doyle* violation is not appropriate unless the error "substantially influenced" the jury's verdict. *Brecht v. Abrahamson*, — U.S. —, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Here Kappos later testified at trial and provided his own explanation for his silence and for his actions. Because he later freely gave his version of these events on the witness stand, the solicitation of comments from the state's witnesses probably did not "substantially influence" the jury's verdict.

### E. State's Instruction Number One

█ Kappos also argues that the last sen-

tence of State's Instruction Number One [2] was potentially confusing with respect to the burden of proof: a juror could have interpreted it to mean that the prosecution was not required to prove beyond a reasonable doubt each element of the offense charged. The state argues that this claim has been procedurally defaulted because, on review of the denial of the post-conviction petition, the Court of Appeals of Indiana found the issue waived. Under *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), only an explicit invocation of a state procedural bar blocks federal consideration of an issue. The language in the state court's opinion is not explicit. The state's Court of Appeals recited that "[t]he Indiana Supreme Court has consistently held that a party waives any errors that concern the trial court's instructions when he does not tender his own instructions." 577 N.E.2d at 976 n. 1. But instead of following that observation with a conclusion such as "and Kappos's claim is waived under that standard," the court proceeded immediately to address the merits. This is no less ambiguous than the state court's discussion in *Harris* itself, so waiver does not offer an independent and adequate state ground of decision. Therefore, we will address Kappos' claim.

 The prosecution bears the burden of proving beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] was charged." *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *Mason v. Gramley,* 9 F.3d 1345 (7th Cir.1993). The use of the instruction, however, to the effect that it was not necessary to prove that an accessory participated in the commission of each element of the offense, did not misinform the jury about the burden of proof. The instruction informed the jury that an accomplice or accessory need not *participate* in the commission of each element of the

offense; an accomplice or accessory need only aid, induce or cause another person to commit an offense. *See United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989) ("aiding and abetting is nothing if not a crime you may commit without performing all of the elements of the substantive offense"); *see also Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (discussing history of aiding and abetting statutes). The instruction therefore did not improperly shift the burden of proof.

AFFIRMED.

---

2. State's Instruction Number One reads:
A person is responsible for the conduct of another person when, either before or during the commission of an offense he knowingly aids, induces or causes the other person to commit an offense. Such a person shall be charged by indictment or information and tried in the same manner as if he were a principle. It is not necessary to prove that such a person participated in the commission of each element of the offense.