81 F.3d 163
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kenneth J. PHILLIPS, Jr., Petitioner-Appellant,
v.
Gary R. MCCAUGHTRY, Respondent-Appellee.
 No. 94-0698.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 27, 1996.
Decided March 22, 1996.
 
 Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Kenneth Phillips, Jr. is a Wisconsin prisoner serving a life term for aiding and abetting first degree murder in violation of Wis.Stat. § 940.01(1). Phillips filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging numerous grounds for relief. The district court denied the petition, concluding that the claims were either procedurally barred or without merit. On appeal, counsel for Phillips contends that the prosecutor's argument to the jury impermissibly commented on Phillips' silence in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240 (1976).
 
 FACTS
 
 2
 David Moureau was found dead in rural Brown County, Wisconsin on October 21, 1981. He died as the result of two gun shots to the head, fired from a small caliber handgun. The murder was the subject of a grand jury inquiry and a John Doe proceeding.[1]
 
 
 3
 In June of 1981 members of a motorcycle gang known as the Drifters broke the windows out of Phillips' car, ransacked Phillips' home, and beat Phillips. On October 16, 1981, Phillips, Moureau, Phillips' wife, Crystal, and Bob Vertz were among a group of people who were drinking in various bars and private residences in and around Green Bay, Wisconsin. During that evening, Phillips allegedly told a friend that he wanted to kill Moureau because Phillips believed that Moureau had disclosed the whereabouts of his home to members of the Drifters.
 
 
 4
 In the early morning hours of October 17, 1981 the four drove around Brown County. Finally, the three men got out of the car and Crystal Phillips drove around and returned a few minutes later. The men walked into the woods and Moureau was shot, apparently with Phillips' .25 caliber handgun.
 
 
 5
 Prior to trial, Phillips had several contacts with the police. On October 21, 1981, four days after the murder and the same day Moureau's body was found in the woods by a hunter, Phillips went to the police but the police sent Phillips away because he had been drinking. Phillips returned the next day and told the police he had seen Moureau the night of the murder at a bar. Phillips told police that he and Moureau separated and that he did not know where Moureau went or what happened to him. On October 24, police talked to Phillips at his house and Phillips told police that the Drifters might be involved in Moureau's murder.
 
 
 6
 On October 31, Phillips again went to the police. He repeated that he had seen Moureau at a bar and that he "threw [his] arms around [Moureau] because [he and Moureau] were such close buddies." Phillips told police that after leaving the bar he did not see Moureau again until he saw Moureau's body at the funeral home. Phillips also told police that his handgun had been stolen on October 2nd or 3rd, before the murder. The next day, a police officer telephoned Phillips and asked if he wanted to come in and give a written statement, but Phillips declined. Counsel stipulated at trial that these contacts with the police were voluntary; Phillips was not a suspect; and Miranda warnings were not required.
 
 
 7
 On August 4, 1982 Phillips testified at the John Doe hearing. He denied any connection with the murder. He repeated that he last saw Moureau at a bar on the night of the murder.
 
 
 8
 The next day Vertz was charged with first degree murder and Phillips was charged with aiding and abetting Vertz in the commission of the crime. They were tried separately to juries in the Circuit Court of Brown County. At Phillips' trial, the prosecution adduced evidence from Crystal Phillips and from various other witnesses who testified that after the murder Phillips bragged about his involvement in the murder. He also said that if his friends told authorities about his involvement with the murder of Moureau, "the same thing would happen to" them. Phillips admitted to his brother, Ralph, that he murdered Moureau. Thereafter Phillips allegedly attempted to frame Ralph for the murder.
 
 
 9
 At trial Phillips testified on his own behalf and denied aiding or abetting Moureau's murder. He said that while Crystal, Vertz, Moureau, and he were driving around, Vertz and Moureau got into a fist fight. Phillips testified that Vertz told him that he wanted to kill Moureau because Moureau had arranged to have Phillips beaten up by members of the Drifters. Phillips testified that he told Vertz this was not true and refused to assist Vertz with the murder, but that Vertz shot Moureau, after obtaining Phillips' gun from the glove compartment of Phillips' car. Phillips testified that he tried to break up the altercation between Moureau and Vertz and that Vertz murdered Moureau while Phillips was on the way back to his car. Phillips denied any involvement in the murder and denied assisting Vertz in any way. He testified that he did not come forward to tell authorities what he knew for fear of harm to his wife and child. Phillips admitted that he threw the murder weapon in the river. He also acknowledged that his trial testimony was inconsistent with his testimony at the John Doe hearing. Phillips admitted that during his pre-trial contacts with authorities he had "ample opportunity" to tell the story he told at trial.
 
 ANALYSIS
 
 10
 Phillips challenges the following portion of the prosecutor's closing argument as an impermissible comment on his silence:
 
 
 11
 The defendant has had numerous opportunities to tell the police his story if he really wanted to do so and if it were really true. But he didn't because he knew it wasn't true.[2]
 
 
 12
 Phillips contends that the prosecutor's argument asked the jury to draw a negative inference concerning his silence.
 
 
 13
 When considering this claim on direct appeal, the Court of Appeals of Wisconsin concluded:
 
 
 14
 Taken in context, these statements refer to inconsistencies in various statements Phillips made to the authorities. This was not a comment on silence, but rather an argument that Phillips lied, which is within the bounds of acceptable argument.
 
 
 15
 State of Wisconsin v. Phillips, No. 88-0066-CR, slip op. at 9 (Wis.Ct.App. October 18, 1988). Similarly, when denying Phillips' petition for a writ of habeas corpus, the district court concluded that the prosecutor's comments were intended to impeach Phillips with his prior inconsistent statements and were not directed to Phillips' pre-trial silence.
 
 
 16
 The Due Process Clause of the Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following Miranda warnings. Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245 (1976). This rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.' " Wainwright v. Greenfield, 474 U.S. 284, 291, 106 S.Ct. 634, 638 (1986) (quoting South Dakota v. Neville, 459 U.S. 553, 565, 103 S.Ct. 916, 923 (1983)). The "implicit assurance" upon which the courts rely in Doyle cases is the right-to-remain silent component of Miranda. Thus, the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129 (1980), or after arrest if no Miranda warnings are given. Fletcher v. Weir, 455 U.S. 603, 606-07, 102 S.Ct. 1309, 1312 (1982) (per curiam). The Supreme Court has concluded that such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. See Jenkins, 447 U.S. at 239, 100 S.Ct. at 2129; see also Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 1716 (1993).
 
 
 17
 Trial counsel stipulated that all of Phillips' contacts with the police in October of 1981 were voluntary and that Miranda warnings were not required. After a person has been given his Miranda warnings, the promise contained in the statement of Miranda rights precludes the prosecutor from commenting on the defendant's silence. Kappos v. Hanks, 54 F.3d 365, 369 (7th Cir.1995).[3]
 
 
 18
 Counsel concedes that there is no evidence in the record concerning when Phillips was given Miranda warnings. We need not remand for an evidentiary hearing on this issue because we conclude that the prosecutor's comment did not refer to Phillips' failure to come forward with his version of events at any time before trial. The prosecutor's comment, taken as a whole, refers to Phillips' contacts with police during which he made statements inconsistent with his trial testimony.
 
 
 19
 Doyle does not apply when the prosecutor merely comments on prior inconsistent statements. The first time Phillips admitted that he was with Moureau at the time of the murder and claimed that he had tried to dissuade Vertz from shooting Moureau was when he took the stand at trial. It was proper and probative for the State to attack his credibility by arguing that Phillips did not tell the authorities his version of the events despite his numerous opportunities to do so. That the prosecutor said during closing argument that Phillips had numerous opportunities to tell the police his story rather than using the broader term "authorities" is not fatal. Phillips had testified earlier in the day that he had "ample opportunity through all these times to tell the authorities his story." This testimony concluded the prosecutor's cross-examination of Phillips in which Phillips acknowledged the inconsistencies between his trial testimony and his statements to the police and at the John Doe hearing.
 
 
 20
 The record fails to establish that either (1) "it was the prosecutor's manifest intention to refer to the defendant's silence"; or (2) "the remark was of such a character that the jury would "naturally and necessarily" take it to be a comment on defendant's silence." United States v. Ramos, 932 F.2d 611, 616 (7th Cir.1991) (quoting United States v. Edwards, 576 F.2d 1152, 1154 (5th Cir.1978)). Rather, reviewing the closing argument as a whole, the challenged portion of the closing argument highlighted inconsistent statements rather than commented on Phillips' silence after being given Miranda warnings (assuming he was given such warnings sometime prior to trial).
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 A John Doe hearing is a --man grand jury"ury" procedure held before a circuit judge, see generally Wis.Stat. § 968.26
 
 
 [2]
 Phillips never objected to this portion of the prosecutor's closing argument but the Wisconsin Court of Appeals considered the issue on the merits and the State has not raised procedural default
 
 
 [3]
 The prosecutor also may not comment on a defendant's silence when the accused exercises his Fifth Amendment right to remain silent during his criminal trial. Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232 (1965). In this case, of course, Phillips did not remain silent throughout the criminal proceedings. Instead, he voluntarily took the witness stand in his own defense