91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andre D. HAWKINS, Defendant-Appellant.
 No. 95-2991.
 United States Court of Appeals, Seventh Circuit.
 Argued July 9, 1996.
Decided July 18, 1996.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Andre D. Hawkins appeals his convictions for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), conspiracy to participate in sale of firearms without required documentation, 18 U.S.C. §§ 922(b)(5) and 371, and participating in the sale of firearms without required documentation, 18 U.S.C. §§ 922(b)(5) and 2. We affirm.
 
 FACTS
 
 2
 In January 1995, federal agents became aware that gun dealer Roger Janotta was illegally transferring handguns to convicted felons. While conducting a search of Janotta's home, they found evidence that Janotta had sold handguns to convicted felon Andre Hawkins under the names of third parties. Janotta told agents that Hawkins had given him the names and IDs of these parties, including Angela George and Shavonda Sibley, which Janotta had used to fill out false federal firearms transfer papers. He also stated that he had transferred fifteen to twenty guns to Hawkins, never using Hawkins' name.
 
 
 3
 On January 22, 1995, Hawkins displayed handguns for sale to Jeffrey Kranz, an undercover Milwaukee police officer. Kranz was able surreptitiously to make scratch marks on the butts of two handguns that Hawkins presented to him. Hawkins was to sell the guns to Kranz at a later date, but the deal fell through (Hawkins later told police that he saw Kranz in court on another matter and assumed that he was an undercover police officer). On February 14, however, Hawkins was taken into custody. After Hawkins was arrested, Kranz went to the home of Hawkins' girlfriend, Angela George, where he found a handgun identical in appearance to the gun Hawkins showed Kranz on January 22. The butt of the gun had scratch marks. While in custody Hawkins gave a statement to police officers, admitting that he had participated in the events of January 22 and that he had bought other firearms from Janotta under the names of third parties.
 
 
 4
 Hawkins was tried on ten counts: one count of conspiring with Janotta to transfer firearms to Hawkins without federally required documentation, five counts of possession of firearm by a felon, and four counts of aiding and abetting Janotta in failing to keep proper firearm transfer records. A jury found him guilty of all but one count of aiding and abetting in failing to keep proper records.
 
 
 5
 On appeal, Hawkins asserts that prosecutorial misconduct impermissibly tainted his trial, citing several instances of allegedly improper conduct. None was subject to any objection during trial.
 
 STANDARD OF REVIEW
 
 6
 In the absence of a timely objection, this court reviews only for plain error. United States v. Young, 470 U.S. 1, 15 (1985). "A plain error is not only a clear error but an error likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, in the conviction of an innocent person or the imposition of an erroneous sentence." United States v. Newman, 965 F.2d 206, 213 (7th Cir.), cert. denied, 506 U.S. 976 (1992). Whether to correct a plain error is within the court's discretion, which it should not exercise unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (quotations and citations omitted).
 
 ARGUMENT
 
 7
 Hawkins argues that the cumulative effect of the prosecutor's errors deprived him of a fair trial because they impermissibly prejudiced the jury against him in a proceeding which rested primarily upon his credibility. In evaluating whether a prosecutor's remarks require a new trial:
 
 
 8
 Initially, we consider whether the prosecutor's comment was improper. If it was, we then evaluate the remark in light of the entire trial and determine whether it deprived the defendant of a fair trial. Five factors influence our evaluation of the impact of a prosecutor's improper comment: (1) the nature and seriousness of the prosecutor's misconduct; (2) whether the prosecutor's statements were invited by impermissible conduct of the defense counsel; (3) whether the trial court instructed the jury to disregard the statements; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant.
 
 
 9
 United States v. Kelly, 991 F.2d 1308, 1315 (7th Cir.1993) (citations omitted); see also United States v. Cotnam, Nos. 95-2943 and 95-3137, slip op. at 19 (7th Cir. July 8, 1996). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." Young, 470 U.S. at 11-12.
 
 
 10
 Hawkins identifies eight errors: during his opening statement, the prosecutor impermissibly appealed to the jury's emotions, attempted to contravene the presumption of innocence and shift the government's burden of proof, and previewed evidence never proved at trial; while examining witnesses, he improperly impeached the defendant's testimony, improperly admonished the defendant, and extracted overly-prejudicial testimony from another witness; and during his closing statement he vouched for the evidence and reemphasized his earlier improper comments. Although he cites these alleged errors, however, he fails to argue and apply the law to each error and thus fails to comply with Fed.R.App.P. 28(a)(6).
 
 I. Opening Statement
 
 11
 According to Hawkins, the prosecution committed three errors during its opening statement.
 
 
 12
 Counsel began his opening statement by remarking, "As we as a society pass tougher gun laws to curb the growing violence and destruction caused by illegal firearms, there will inevitably be people in our society who profit from this destruction. Andre DeShawn Hawkins is one such person. The case that you will hear over the next few days is a case about an individual, a very dangerous young man, a street-level gun trafficker." Hawkins claims that this prelude "blatantly appealed to the jury's emotions" in violation of his right to a fair trial.
 
 
 13
 A prosecutor may not employ arguments designed to appeal to the emotions of the jury. Kelly, 991 F.2d at 1314. This argument appears to be inappropriate because it naturally addresses the fears of jurors inundated with news reports about increasing gun violence. See United States v. Moreno, 991 F.2d 943, 947 (1st Cir.) (statement that community "plagued by violence, senseless violence, shootings and killings" outside bounds of legitimate argument when no evidence presented of such activities), cert. denied, 114 S.Ct. 457 (1993); United States v. O'Connell, 841 F.2d 1408, 1427 (8th Cir.) (calling defendants "dangerous people" considered an emotional appeal), cert. denied, 487 U.S. 1210 (1988). This court, however, has held that a "prosecutor may impress upon the jury the seriousness of the crime charged; however, examples used in making the point must be general in nature and must be fairly supported by the evidence before the jury." United States v. Pirovolos, 844 F.2d 415, 425 (7th Cir.), cert. denied, 488 U.S. 857 (1988); see also United States v. Ferguson, 935 F.2d 1518, 1530-31 (7th Cir.1991) (declaration "merely a reference to society's drug problem and [defendant's] role in exacerbating this global problem.")
 
 
 14
 Under the Kelly factors, this remark, even if inappropriate, does not rise to the level of rendering Hawkins' trial unfair. Although the comment was not invited by the defense and no specific curative instruction was given, the court instructed the jury that opening statements were not to be considered evidence both before and immediately following the prosecution's opening statement, and this court presumes that juries follow their instructions. Kelly, 991 F.2d at 1314. The defense was able to counteract the prosecution's opening statement in its opening.[1] Further, the evidence against Hawkins was overwhelming (and, in fact, tended to substantiate the claim that Hawkins was dangerous). Cf. Kappos v. Hanks, 54 F.3d 365, 367-68 (7th Cir.1995) (calling defendant a "murderer" and "an artful liar" while commenting on his credibility did not render trial constitutionally unfair); Alvarez v. McGinnis, 4 F.3d 531, 534 (7th Cir.1993) (trial not unfair although prosecution characterized defendant as "professional hit man" without evidence); United States v. Severson, 3 F.3d 1005, 1015 (7th Cir.1993) (in context of trial, invoking societal standards of expected conduct not reversible error); Shepard v. Lane, 818 F.2d 615, 621-22 (7th Cir.) (prosecutor's characterizations of defendant as a "liar," a "dog," and an "animal" did not deprive defendant of a fair trial in the context of the trial as a whole), cert. denied, 484 U.S. 929 (1987); United States v. Ovalle- Marquez, 36 F.3d 212, 220-21 (1st Cir.1994) (invoking Columbian connection in closing did not deprive defendant of fair trial where prosecutor merely asked jury to draw inferences from witness testimony), cert. denied, 115 S.Ct. 947 (1995); Moreno, 991 F.2d at 948-49 (inappropriate arguments do not warrant reversal); O'Connell, 841 F.2d at 1427-28 (court not convinced emotional appeal improper in context).
 
 
 15
 In this case the overwhelming evidence against Hawkins included Janotta's testimony that he sold guns to Andre Hawkins under third parties' names and that he filled out the firearm transfer records; physical evidence such as notations and messages from Janotta's house; Kranz's testimony that Hawkins displayed handguns and offered to sell them and that one of these guns was recovered from Angela George's house; Angela George's testimony that Hawkins occasionally stayed at her house; testimony about the recovery of one gun Janotta transferred to Hawkins from Hawkins' brother at Angela George's house; officers' testimony about Andre Hawkins' confessing statements at the police station (he admitted receiving guns from Janotta and reselling them to unknown individuals from Milwaukee and Chicago); and Hawkins' signed confessions. In light of this evidence, slight improprieties do not constitute a miscarriage of justice. Cf. Arrieta-Agressot v. United States, 3 F.3d 525, 530 (1st Cir.1993) (defendant deprived of fair trial where prosecutor's closing argument repeatedly referred to the "war on drugs," characterized defendants as enemy soldiers, and referred to disruption and corruption of "our society" and poisoning of "our children" and evidence not overwhelming).
 
 
 16
 Hawkins also asserts that the statement, "[Hawkins] has entered a not guilty plea in this case, in essence he's denied every material allegation of guilt. He is asking the government to prove his guilt," constitutes an impermissible inference that the trial was unnecessary because Hawkins was guilty. After the statement, the court said, "Counsel, I don't believe that's quite accurate. He's not asking the government to prove its [sic] guilt." The prosecutor responded, "In essence the government now has to prove his guilt," and continued his opening.
 
 
 17
 This statement does not rise to the level of plain error. The court carefully instructed jurors before opening statements and again before deliberations that the defendant was presumed innocent and that the government had the burden of proof beyond a reasonable doubt; it also intervened and let the jury know that the statement was not accurate. Although the statement could have been more appropriately worded, it was not such a misstatement that it caused a miscarriage of justice, especially coming as it did at the beginning of a three-day trial.
 
 
 18
 Finally, Hawkins claims the prosecutor improperly added unproven facts when he told the jury that it would hear the testimony of Shavonda Sibley (that she did not fill out any federal government transfer forms and that she had never received firearms from Hawkins) and then later failed to call Sibley to the stand. This information was conveyed in two sentences near the end of the government's opening statement and was a straightforward recitation of Sibley's statements to police.
 
 
 19
 This alleged error does not constitute plain error. See United States v. Ashman, 979 F.2d 469, 490-91 (7th Cir.1992) (not abuse of discretion for trial judge to deny motion for mistrial where government failed to call four witnesses over course of three-month trial), cert. denied, 114 S.Ct. 62 (1993); United States v. Akin, 562 F.2d 459, 466 (7th Cir.1977) (no evidence of prosecutorial misconduct where government expected to be able to call witness at time of opening statement but barred by judge's subsequent ruling), cert. denied, 435 U.S. 933 (1978); United States v. Garcia, 978 F.2d 746, 749 (1st Cir.1992) (defendant waived objection to government's failure to introduce previewed evidence when he failed to raise issue at close of government's case). Other prosecution witnesses testified about the same topics (Janotta, for instance, testified that he filled out and signed the Sibley forms). See Ashman, 979 F.2d at 491; United States v. Perry, 925 F.2d 1077, 1081 (8th Cir.) (no error to refuse motion for mistrial because of missing witness; defendant free to cross-exam other witnesses and point out weakness of government's remaining evidence), cert. denied, 502 U.S. 849 (1991). Most importantly, the jury was instructed before counsel's opening and before it began deliberating that counsel's opening statements were not evidence. See Frazier v. Cupp, 394 U.S. 731, 736 (1969) ("Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given."); Ashman, 979 F.2d at 491; Perry, 925 F.2d at 1081.[2]
 
 II. Examination of Witnesses
 
 20
 Hawkins also identifies three errors that occurred during the examination of witnesses.
 
 
 21
 First, he claims that the prosecutor improperly impeached his testimony by introducing the fact that one of his prior felonies was for endangering safety by the use of a dangerous weapon, bolstering the themes of violence and dangerousness introduced in the opening statement. This action, however, was not error, much less plain error. It is permissible to impeach the testimony of a defendant who chooses to waive his Fifth Amendment privilege by eliciting the fact, date, and general nature of a prior conviction. United States v. Robinson, 8 F.3d 398, 409 (7th Cir.1993); United States v. Gaertner, 705 F.2d 210, 217 (7th Cir.1983), cert. denied, 464 U.S. 1071 (1984); see Fed.R.Evid. 609(a). Here the defense opened the door, because the defendant testified on direct examination that he had two felony convictions, when in fact he had three. The prosecution went no further than allowed.
 
 
 22
 Second, Hawkins claims that the prosecution improperly elicited prejudicial detail about the recovery of one of the handguns allegedly sold by Janotta to Hawkins. Officer Todd Bohlen testified that he responded to a woman's call about a man with a gun. In that area and fitting the given description they found James Hawkins (brother to the defendant), and when they told him to stop, he ran a half-block to 2501 North 34th Street (Angela George's house) and attempted to enter. The door was locked, so James Hawkins jumped on the porch railing, grabbed the rain gutter, reached into his jacket, withdrew a gun, and threw it onto the roof. The gun slid back off the roof and landed by Bohlen's foot; it was a Jennings .9 mm handgun, serial number 858071. That gun had been sold by a gun wholesaler to Roger Janotta, and Janotta testified that he had filled out false firearm transfer papers for the gun under the name Teresa Toliver. In his confession, Hawkins stated that he gave the gun to his brother, but at trial he denied ever receiving guns from Janotta and said his confession was false.
 
 
 23
 The admission of this evidence caused no miscarriage of justice sufficient to constitute plain error. The prosecution was entitled to introduce relevant evidence about the recovery of the gun to establish the connection between James Hawkins, Andre Hawkins, and Janotta and corroborate the details of Hawkins' confession, especially after Hawkins denied ever receiving firearms from Janotta. The specific circumstances of recovery were also relevant, considering that James Hawkins tried to enter Angela George's house.[3] The prosecution did not overly dwell on the details of what James Hawkins had been doing with the gun. Further, the jury acquitted Hawkins on one of the two counts connected with this firearm (a count of causing Janotta to transfer a firearm without keeping accurate records).
 
 
 24
 Finally, Hawkins avers that the prosecutor "improperly admonished Hawkins" in an attempt to impair Hawkins' credibility. The transcript reflects that the prosecutor was reading to Hawkins the confession he signed after being interviewed by police. He read statements and asked Hawkins if that was what the confession said. Rather than answering yes or no, Hawkins attempted to make explanations. Perhaps the prosecutor should have asked the court to admonish the defendant rather than doing it himself, but in fact Hawkins was not answering the questions asked. The prosecutor's statements do not rise to the level of plain error.
 
 III. Closing Arguments
 
 25
 Finally, Hawkins identifies two errors in the government's closing statement.
 
 
 26
 Near the beginning of his closing, the prosecutor stated, "Now, throughout the trial I'm naturally concerned with whether there's some problem with our case. I'm looking for evidence which would show that perhaps our charges are wrong. Well, in this case there isn't any, at least any that has any credibility." Hawkins alleges that this "personal assurance" constitutes vouching for the evidence. "[I]t is never proper for any attorney to vouch for the truthfulness of a witness's testimony because the determination of credibility is a task left exclusively to the jury," United States v. Davis, 15 F.3d 1393, 1400-01 (7th Cir.), cert. denied, 115 S.Ct. 250 (1994); Young, 470 U.S. at 18-19, but "the government is allowed to comment on the credibility of a witness ... as long as the comment reflects reasonable inferences from the evidence adduced at trial rather than personal opinion." United States v. Goodapple, 958 F.2d 1402, 1409-10 (7th Cir.1992). Here the prosecutor's remarks should more plausibly be taken as a commentary on the credibility of the defendant's case as reflected in the evidence and thus do not rise to the level of plain error. See, e.g., Kappos, 54 F.3d at 368 (prosecutor's characterizations taken as commentary on issue of defendant's credibility); United States v. Patterson, 23 F.3d 1239, 1250-51 (7th Cir.) (prosecutor's single use of "I think" did not transform statement from commentary on evidence into personal opinion), cert. denied, 115 S.Ct. 527 (1994); cf. Cotnam, Nos. 95-2943 and 95-3137, slip. op at 8-9 (repeated assurances that government witness was credible). Further, the jury was instructed that closing statements are not evidence and that they were the sole judges of the credibility of witnesses. "[Jury] instructions effectively address[ ] the risk the vouching presented and sufficiently dispel[ ] any prejudicial effect the vouching may have had. 'We rely on our belief that juries heed the instructions.' " Davis, 15 F.3d at 1402 (quoting Severson, 3 F.3d at 1015).
 
 
 27
 The prosecution also reemphasized its earlier comments about James Hawkins and the recovered gun and Hawkins' third felony conviction. Because the admission of the evidence was not plain error, neither was its summation as only one part of an extensive closing statement.
 
 CONCLUSION
 
 28
 None of the comments that Hawkins cites can be considered a plain error. Hawkins was not denied his right to a fair trial, and therefore his conviction is AFFIRMED.
 
 
 
 [1]
 In fact, the defense also chose to address the issue of Milwaukee's increasing amount of gun violence in its closing, which tends to outweigh the government's actions during the opening
 
 
 [2]
 Additionally, this court has previously stated that "the failure of the district attorney to sustain his opening statements could not be prejudicial to the defendant but rather to the government." United States v. Smith, 253 F.2d 95, 98 (7th Cir.), cert. denied, 357 U.S. 919 (1958); see Akin, 562 F.2d at 466
 
 
 [3]
 Angela George was one of the names used on the firearms transfer records. George reportedly had a romantic relationship with Andre Hawkins and he occasionally stayed at her house, and it was there that police discovered Hawkins' IDs and one of the handguns marked by Kranz